0875

Christopher B. YATES, employee, Appellant v. LIFE INSURANCE COM-
PANY OF GEORGIA, employer and self-insurer, Respondent.

(353 S. E. (2d) 297)

Court of Appeals

*John W. Bledsoe*, of *Saleeby, Cox & Bledsoe*, Hartsville, and *C. Ben Bowen*, of *Abrams, Bowen & Parham*, Greenville, *for appellant.*

*William W. Watkins*, of *Turner, Padget, Graham & Laney*, Columbia, *for respondent.*

Heard Dec. 8, 1986.

Decided Feb. 2, 1987.

GOOLSBY, Judge:

This is a workers' compensation case where the issue we are asked to decide is whether injuries resulting from a suicide attempt are compensable. The single commissioner awarded benefits. The full commission, in a divided decision, affirmed the award. The circuit court reversed. Yates appeals. We affirm.

In September 1981, Yates left the University of South Carolina, where he attended college, to take a job with the Life Insurance Company of Georgia. He started work as a sales agent but soon became a "debit" salesman. As a debit salesman, he collected insurance premiums as well as sold insurance.

Yates quickly became dissatisfied with his job. He disliked pressuring clients, mostly people with low incomes, to pay for their insurance and he disliked cancelling their insurance when they did not pay. Yates began to view himself as a failure and came to dread going to work. His efforts to find other employment proved unsuccessful.

On May 5, 1983, Yates went to work and performed his usual duties. Between 11:30 a.m. and 12:00 noon, he returned to his apartment for lunch, as was his custom. While at the

apartment and after deliberating for about an hour, Yates decided to kill himself. At 2:40 p.m., he shot himself in the head. Yates succeeded in destroying only his eyesight.

Thereafter, Yates made a claim for workers' compensation. Life Insurance Company of Georgia denied that a compensable injury had occurred. It also asserted as an affirmative defense that Yates' blindness resulted from a willful intention to kill himself. *See* S. C. Code of Laws § 42-9-60 (1976) ("No compensation shall be payable if the injury ... was occasioned ... by the wilful intention of the employee to injure or kill himself. ...")

Yates testified at the hearing that he attempted to kill himself because he was frustrated about his job and felt like he was at "the end of [his] rope." When asked to explain why his job frustrated him, he responded, "I just didn't enjoy it, didn't like what I had to do."

Dr. Marvin John Short, II, a psychiatrist and Yates' medical expert, testified that Yates suffered from a "brief reactive psychosis" and that it "developed secondarily to situational stresses and pressure." Dr. Short believed that Yates' attempt to take his life "was a direct result of stress and pressures from the job."

The single commissioner found that, at the time Yates attempted suicide, Yates "was severely depressed and emotionally disturbed as a result of his job situation." He further found that Yates' "suicide attempt was the product of an irrational, temporarily deranged mind" and was done neither intentionally nor deliberately. The full commission affirmed the single commissioner in a 3 to 3 decision. One commissioner voted to reverse the single commissioner because "[a] mere [mental] breakdown without the presence of an unusual circumstance or condition of employment is not a compensable accident."

The circuit court reversed. Relying upon *Petty v. Associated Transport*, 276 N. C. 417, 173 S. E. (2d) 321 (1970), the circuit court held that a worker's attempted suicide is compensable where the suicide attempt is directly attributable to a prior physical injury arising out of and in the course of the worker's employment. Because Yates suffered no prior physical injury, the circuit court denied him compensation. *See* Annot., 15 A. L. R. (3d) 616, 639-40 (1967) (reference to

cases that require mental aberration resulting in suicide to be traumatic in origin).

On appeal, Yates' principal argument is that the circuit court erred in conditioning compensation for a mental disorder that results in a suicide on a prior physical injury. *See Findley v. Industrial Commission of Arizona*, 135 Ariz. 273, 660 P. (2d) 874 (Ct. App. 1983) (compensation allowed under a statute for a "mental injury" caused by "some unexpected, unusual or extraordinary stress related to employment or some physical injury related to the employment"); *University of Pittsburgh v. Workmen's Compensation Board*, 49 Pa. Commw. 347, 405 A. (2d) 1048 (1979) (an employee who was disabled by a work-related mental illness suffered an "injury" within the meaning of the Workmen's Compensation Act, thus entitling his widow to death benefits when the employee committed suicide in an irrational frenzy).

Among the additional sustaining grounds advanced by the Life Insurance Company of Georgia is the purported error by the circuit court in not adopting the rule announced in *In re: Sponatski*, 220 Mass. 526, 108 N.E. 466 (1915) and applying it to the facts of this case. The *Sponatski* rule, among other things, also requires that the mental disorder causing one to commit suicide result directly from a physical injury. Annot., 15 A. L. R. (3d) 616, 628-29 (1967).

We see no need, however, to determine which of these rules the circuit court should have applied here because it is clear that the worker in this instance is not entitled to compensation in any event.

A compensable injury under the Workers' Compensation Act includes only an "injury by accident arising out of and in the course of employment." S. C. Code of Laws § 42-1-160 (1976). The word "accident," as used in workers' compensation, means an unlooked for and untoward event that the person who suffered the injury did not expect, design, or intentionally cause. *Colvin v. E.I. du Pont de Nemours Co.*, 227 S. C. 465, 88 S. E. (2d) 581 (1955); *Radcliffe v. Southern Aviation School*, 209 S. C. 411, 40 S. E. (2d) 626 (1946).

Although the record supports the conclusion that Yates suffered from a temporary mental disorder and that his mental disorder caused him to attempt sui-

cide, Yates offered no evidence that an employment related accident caused his mental problem. Assuming that a mental disorder is compensable if it is caused by an unexpected, injury-causing event, a mental disorder is not compensable as an "injury by accident" if it either results from exposure to normal working conditions or is brought about by the gradual buildup of emotional stress over a period of time. *See Fleming v. Appleton Co.*, 214 S. C. 81, 51 S. E. (2d) 363 (1949) (absent evidence of an unusual condition or event at the claimant's work environment, claimant's nervous breakdown was held to be noncompensable despite medical testimony that claimant's condition may have resulted from his transfer of job assignments and his dislike of his new assignment); *Consolidated Freightways v. Drake*, 678 P. (2d) 874, 877 (Wyo. 1984) (a worker can recover for slowly developing mental injuries only if the injuries result "from a situation or condition in employment that is of greater magnitude than the day-to-day mental stresses and tensions all employees usually experience."); *Verdugo v. Industrial Commission*, 114 Ariz. 477, 561 P. (2d) 1249 (Ct. App. 1977) (a disabling mental condition is not compensable if it is caused by a general buildup of emotional stress from the usual, ordinary, and expected incidents of the worker's employment); *Muse v. Industrial Commission*, 27 Ariz. App. 312, 554 P. (2d) 908 (1976) (a disabling mental condition is not compensable if it is caused by the gradual buildup of emotional stress over a period of time and not by an injury-causing event); *Hammerle v. Workmen's Compensation Appeal Board (Department of Agriculture, Bureau of Dog Law Enforcement)*, 88 Pa. Commw. 486, 490 A. (2d) 494 (1985) (a mental or nervous disorder is not compensable if it results from an employee's subjective reaction to being at work and being exposed to normal working conditions); 1B A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 42.23 at 7-647-652 (1986) (reference to cases denying compensation for nervous injury caused by a mental or emotional stimulus); Annot., 97 A. L. R. (3d) 161, 191-200 (1980) (discussion of cases wherein the court denied compensation for mental disorders allegedly induced by nonsudden emotional stimuli, particularly stress and pressure); *cf. Anderson v. Armour & Co.*, 257 Minn. 281, 101 N.W. (2d) 435 (1960)

(death of an employee held compensable where the employee suffered psychotic depression as a result of running over a pedestrian and the employee a week later and while at work committed suicide as a result of such depression).

Here, there is no evidence that Yates' mental disorder was induced by a sudden unexpected event. Rather, the evidence suggests only that it was related to his general dissatisfaction with normal working conditions.

Indeed, Yates' medical expert conceded that Yates' job was "probably not" any different from those of other agents "that [were] doing this kind of insurance selling" and that there was "probably not" anything "unusual about this type of work in terms of what anybody else in the same job would have done." In his psychiatric evaluation of Yates, the medical expert for the Life Insurance Company of Georgia, Dr. Robert L. Banks, observed that Yates' "work was apparently quite similar to that of his co-workers."

Yates himself did not testify as to any unusual or abnormal working conditions associated with his job as a debit salesman. He agreed that "no unusual event" immediately preceded his suicide attempt.

Because the record in this case, like the record in *Fleming*, "admits only of the inference that there was no unusual condition or event in his work environment," we hold, like the Supreme Court did in *Fleming*, that "there was no accident." 214 S. C. at 86-87, 51 S. E. (2d) at 365. The decision of the Industrial Commission awarding Yates compensation is clearly erroneous.

We therefore affirm the judgment appealed from but for a different reason. Accordingly, the judgment is

Affirmed.

BELL and CURETON, JJ., concur.