## 1229

Danny W. STOKES, Claimant, Respondent v. FIRST NATIONAL BANK, Employer, and Fidelity and Guaranty Insurance Underwriters, Appellants.

(377 S. E. (2d) 922)

Court of Appeals

*Jackson L. Barwick, Jr.,* and *S. Markey Stubbs, Belser, Baker, Barwick, Ravenel & Bender,* Columbia, *for appellants.*

*Preston F. McDaniel* and *John K. Koon,* Columbia, *for respondent.*

Heard Sept. 15, 1988.

Decided Oct. 31, 1988.

GARDNER, Judge:

The principal question this workers' compensation case requires us to decide is whether a claimant's nervous breakdown caused by emotional stimuli or stressors alone is compensable. We hold that there is no valid justification in such cases for distinguishing between mental disorders resulting from physical injuries and mental disorders brought about by emotional stimuli or stressors which are incident to unusual and extraordinary conditions in employment.

Commissioner James J. Reid found as a fact that claimant suffered "a bodily injury on or before November 30, 1984, of a general psychological nature as a result of the unusual and

extraordinary conditions of his employment with First National Bank of South Carolina...." He found that Stokes has a 50 percent permanent partial disability and awarded him $268.99 per week for 340 weeks. The full commission and the Court of Common Pleas affirmed Commissioner Reid's order. We also affirm.

## ASSIGNMENTS OF ERROR

First National's exceptions to the appealed order include: (1) that respondent suffered a "mental-mental injury" (mental stimuli resulting in mental injury) which is not recognized in South Carolina Workers' Compensation law as a compensable injury, (b) that in South Carolina, a mental injury requires a physical element which was not present in this case, (c) that there was no evidence of an accident occurring prior to December 9, 1984, (d) that the commissioner erred in adopting the "heart attack test" as the sole consideration in determining the compensability of mental-mental injuries, (e) that the finding of the commission that Stokes suffered an injury on or before December 1, 1984, was based upon surmise, conjecture and speculation.

## FACTS

In late 1983 management announced that the First National Bank would merge with the South Carolina National Bank. In early January 1984, First National told Stokes and its other employees that the merger would occur on December 1, 1984; this date became known among First National employees as "D" Day.

In January 1984, Stokes was Vice President in charge of item processing at the operations center for First National Bank in Columbia, South Carolina; as such he supervised more than 130 employees, including four managers. One of the managers resigned that month and was not replaced since management anticipated that when the banks merged fewer employees would be needed. Instead, Stokes assumed his duties. As a result Stokes' work hours increased in January 1984 from approximately 45 hours per week to about 60 hours per week. In July 1984, the record indicates that Stokes began to work 12 to 15 hours per day, another significant increase.

The most significant jump in work hours occurred after November 10, 1984, as "D" Day approached, when Stokes' work hours increased to between 16 and 18 hours per day seven days a week. Mrs. Barbara Miller, who worked closely with Stokes preparing for the merger, testified about the extraordinary working conditions then at First National and described Stokes' condition in mid-November 1984 thusly:

Q. Was Danny able to run his job by mid-November at the latest date of 1984?

A. No. Absolutely not.

Q. And do you have an opinion as to why that was so?

A. It was more work than was humanly achieveable by one person. There were too many people to manage, to supervise, too much to be done. And not enough support in terms of additional managers and so on working for him to take up some of that load.

Stokes' wife also testified that the "straw that broke the camel's back" was the increased work load after November 10, 1984, a date firmly fixed in her mind because of a weekend trip that the family took to Hilton Head, South Carolina.

The merger occurred on schedule on December 1, 1984. Stokes worked at SCN until December 9, 1984. Then he "just gave up" and was hospitalized until the first of the year for what is known in layman's language as a nervous breakdown. When Stokes attempted to return to work, SCN informed him that he was discharged. His salary was $42,000 per year when discharged. At the time of the hearing of this case and after extensive hospitalization, medical treatment, psychotherapy, counseling, etc., Stokes was working with the State of South Carolina and earning $28,000 per year. There is substantial evidence of record that because of the nervous breakdown Stokes is permanently disabled to work as an executive with the responsibilities he previously handled for First National.

## DISCUSSION

In addressing the issues put to this Court by the above exceptions and the questions presented in First National's brief, we hold it necessary (1) to define the word "accident"

as used in workers' compensation cases, (2) to review the applicable heart attack injury cases, (3) to review the development of mental injury cases in South Carolina, (4) to address the issue of whether mental-mental injuries are compensable in this state and (5) to determine if the commission erred in determining that Stokes suffered a compensable injury. It will be seen in the discussion which follows that over the years the restricted meaning of the word "accident" which was applied in earlier workers' compensation cases gave way to a much more expansive connotation of the word. And on the heels of this development, the judicial construction by the South Carolina Supreme Court of the words "arising out of employment" was enlarged to include injuries resulting from "unusual or extraordinary conditions of employment." These developments in workers' compensation law, as will be seen, were the precursors of this decision.

## DEFINITION OF "ACCIDENT"

For long years the word "accident" was interpreted by the Supreme Court of South Carolina as a term which referred to a physiological injury resulting from work and caused by an external act or occurrence. *Radcliffe v. Southern Aviation School*, 209 S. C. 411, 40 S. E. (2d) 626 (1946).

The connotation of the word "accident" as presently applied by our courts in workers' compensation cases means an unlooked for or untoward event that the injured person did not expect, design or intentionally cause. *Yates v. Life Insurance Co. of Georgia*, 291 S. C. 301, 353 S. E. (2d) 297 (Ct. App. 1987). It is not necessary that the accidental quality or condition be created by a wound or external violence. *Hiers v. Brunson Construction Co.*, 221 S. C. 212, 70 S. E. (2d) 211 (1952). The term relates not only to the dynamics of the occurrence causing the injury but also to the injury itself. We quote from *Colvin v. E. I. DuPont de Nemours Co.*, 227 S. C. 465, 468, 88 S. E. (2d) 581, 582 (1955).

The term 'injury' as used in the phrases 'personal injury or death accidentally sustained,' 'injury by accident,' 'injury proximately caused by accident,' and similar expressions, has been construed to mean not only an injury the means or cause of which is an accident, but

also an injury which is itself an accident; that is, an injury occurring unexpectedly from the operation of internal or subjective conditions, *without the prior occurrence of any external event of an accidental character.* (Emphasis added.)

The rule is plainly laid down in *Hiers v. Brunson Construction Co., supra,* as the law of South Carolina that the adjective "accidental" may refer to the injury itself.

In the majority of jurisdictions, no slip, fall or other fortuitous event or accident in the cause of the injury is required; *the unexpected result or industrial injury is itself considered the compensable accident.* [Emphasis ours.]

221 S. C. at 231, 70 S. E. (2d) at 220.

The compensability of a particular event as an accident within the purview of the workers' compensation law is a question of law to be decided by the courts, while the commission's factual determination as to whether an accident occurred is conclusive if supported by competent evidence. *Grayson v. Gulf Oil Co.,* 292 S. C. 528, 357 S. E. (2d) 479 (Ct. App. 1987).

## HEART ATTACK INJURIES

A careful review of the mental injury cases of this state compels the conclusion that both the Supreme Court and this Court have likened mental injury cases to heart attack cases; because of this a short review of the development of "heart attack" compensation cases is essential to this decision.

In earlier heart attack cases, the rule was that the heart attack must be the result of sudden, unusual exertion, violence or strain. *See Raley v. City of Camden,* 222 S. C. 303, 72 S. E. (2d) 572 (1952). As late as 1959 our Supreme Court wrote that this state was committed to the unusual exertion or strain rule. *Sims v. S. C. State Commission of Forestry,* 235 S. C. 1, 109 S. E. (2d) 701 (1959).

In 1960 in the case of *Kearse v. S. C. Wildlife Resources Department,* 236 S. C. 540, 115 S. E. (2d) 183 (1960) our Supreme Court announced a new and, we think, enlightened rule that a heart attack is compensable if it is induced by

unexpected strain or overexertion *or by unusual or extraordinary conditions of employment.*

For a number of years unusual and excessively long work schedules have been recognized as unusual and extraordinary working conditions.

*Kearse, supra,* held that a coronary occlusion or thrombosis constituted a compensable accident where the evidence showed that for several days prior to the attack the claimant, a game warden, had worked 16 to 18 hours per day, far in excess of his usual hours. *Wynn v. Peoples Natural Gas Co. of S. C.,* 238 S. C. 1, 118 S. E. (2d) 812 (1961), held that a general manager and supervisor of operations of a gas company suffered a compensable heart attack where the evidence showed that prior to the attack, during a period of conversion from propane to natural gas, the claimant was required to increase his work schedule from the usual 8½ hours per day to 16 hours per day.

In *McWhorter v. S. C. Dept. of Ins.,* 252 S. C. 90, 165 S. E. (2d) 365 (1969), the claimant was an employee of the South Carolina Department of Insurance. He normally worked 36 hours per week with very little overtime and very little travel. But in the preparation of a certain case for trial, the claimant became engaged in an unusual investigation which created extraordinary conditions of employment at the time of his fatal heart attack: unusually long hours, great mental stress and strain, emotional involvement, lack of sleep, time pressure, physical exertion, among other conditions. The court concluded a compensable accident had occurred. The same rule was applied in the cases of *Brown v. La France Industries,* 286 S. C. 319, 333 S. E. (2d) 348 (Ct. App. 1985) and *Poulos v. Pete's Drive-In No. 3,* 284 S. C. 264, 325 S. E. (2d) 583 (Ct. App. 1985). Both of these cases recognize an unusual and excessively increased work load as an unusual and extraordinary condition of employment making resulting heart attacks "accidents" compensable under the Workers' Compensation Act.

We conclude that the increase of the work load assigned Stokes in early November 1984, constituted an "unusual and extraordinary condition of employment."

## MENTAL INJURY CASES IN SOUTH CAROLINA

Our Supreme Court affirmed an award of workers' compensation benefits for a mental disorder resulting from physical injury in *Kennedy v. Williamsburg County*, 242 S. C. 477, 131 S. E. (2d) 512 (1963). There the claimant, a chain gang guard, was assaulted and beaten by prisoners. Claimant alleged that the assault caused a mental injury which resulted in paranoid schizophrenia. The Supreme Court affirmed the award of compensation benefits for total disability.

*Bridges v. Housing Authority, City of Charleston*, 278 S. C. 342, 295 S. E. (2d) 872 (1982) held that an employee's nervous breakdown, which allegedly led to his fatal heart attack, was not an accidental injury within the purview of the Workers' Compensation Act because the claimant failed to establish that his nervous breakdown was the result of an unusual exertion or condition or event.

In *Yates v. Life Insurance Co. of Georgia*, 291 S. C. 301, 353 S. E. (2d) 297 (Ct. App. 1987) the claimant attempted suicide allegedly as a result of a work-related temporary mental disorder. The claimant was a debit insurance agent whose duties involved collecting premiums as well as selling insurance. He became dissatisfied with his job because, among other things, he disliked pressuring clients to pay for their insurance and also cancelling their insurance when they did not pay. Yates offered medical testimony to the effect that his suicide attempt was the result of severe depression brought about by his job. There was, however, no evidence of any unusual event or condition associated with his job and no unusual event preceding his suicide attempt. This court held in *Yates* that a mental disorder is not compensable as an injury by accident if it results from normal working conditions or is brought about by a gradual build up of emotional stress within the employee over a period of time. The alleged injuries were held in *Yates* to be noncompensable because "there was no accident" in that there was no unusual event or condition in his work environment.

## ARE MENTAL-MENTAL INJURIES COMPENSABLE
## IN SOUTH CAROLINA

First National correctly observes that mental-mental injuries have resulted in a fragmented and diverse body of workers' compensation law in this country. A vast majority of the states deem mental-mental injuries to be compensable but under widely varying parameters. *See* 1B Larson, Workmen's Compensation Section 42.23 (1987); Annot., 97 A. L. R. (3d) 161 (1980).

With reference to this decision and the law of South Carolina, we hold that *Bridges* and *Yates* are not inconsonant with *Kennedy*. To the contrary, we believe these cases illustrate the thinking of our courts that mental injuries are compensable if, as in heart attack cases, the mental injury is induced either by physical injury as in *Kennedy* or by unusual or extraordinary conditions of employment.

In the case before us, we are asked to determine whether a mental injury which was the result of non-physical stressors incident to unusual and extraordinary work conditions in the form of an excessively increased work schedule is compensable. We hold that it is.

The stress and stressors incident to the 16-18 hour work days, seven days per week, which Stokes endured, beginning on or about November 10, 1984, were found by Commissioner Reid to have resulted in the accident of Stokes' mental injury. There is substantial evidence of record to support this finding of fact and we are bound by the holding of Commissioner Reid. *Kennedy* is authority for the proposition that Stokes' mental injury is compensable. And we so hold.

Our decision is bolstered because it is in keeping with the purposes of the Act. The Workers' Compensation Act was adopted to protect industrial workers against the hazards of their employment and to cast on the industry in which they were employed a share of the burden resulting from industrial accidents. *Taylor v. Mount Vernon-Woodberry Mills*, 211 S. C. 414, 45 S. E. (2d) 809 (1947). Workers' compensation laws are to be liberally construed and any reasonable doubt as to construction of the Act must be resolved in favor of the

claimant, the provisions of the Act reconciled, if possible, its purposes effectuated, and its presumptions and penalties directed toward the end of providing coverage rather than noncoverage. *Cokeley v. Robert Lee, Inc.*, 197 S. C. 157, 14 S. E. (2d) 889 (1941). And lastly, compensation laws should be given a liberal construction in furtherance of the beneficient purposes for which they were enacted and so as to avoid incongruous or harsh results. *Sligh v. Pacific Mills*, 207 S. C. 316, 35 S. E. (2d) 713 (1945). It follows then that we cannot on the one hand rule that a mental injury brought about by physical stimuli is compensable under the Workers' Compensation Act and on the other hand, hold that a mental injury brought about by non-physical stressors incident to highly unusual and extraordinary conditions of employment is not compensable. Such a holding would not only constitute a harsh result, but also would be incongruous with the well-established principles of compensation law just reviewed.

## CONCLUSION

In summary, there emerged in South Carolina workers' compensation law (1) the concept that the word "accident" encompasses the injury itself, (2) the concept that an accident which occurred as the result of "unusual or extraordinary conditions of employment" met the test of an accident arising out of employment, and (3) the concept that a mental or nervous disorder is a compensable personal injury under the Workers' Compensation Act when brought about by a physical injury arising out of and in the course of employment.

We have correlated all of the above concepts in this decision and hold that mental or nervous disorders resulting from either physical or emotional stimuli are equally compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment.

For the above reasons, we conclude and hold that Commissioner Reid's order finding that as a matter of fact Stokes suffered a compensable mental injury on or before November 30, 1984, as the result of unusual and extraordinary conditions of his employment with First National is sup-

ported by substantial evidence of record. His finding of fact is not conjectural and we so hold. There is evidence of record that in early November 1984, Stokes' work schedule was drastically increased to between 16 and 18 hours per day, seven days a week; Commissioner Reid did not err in holding this to have been an unusual and extraordinary condition of Stokes' employment. And we so hold. There is also substantial evidence of record that Stokes became dysfunctional about the middle of November. The exact moment of the manifestation of Stokes' injury is, of course, unascertainable, but there is substantial evidence of record to support the finding of the commissioner that on or before November 30, 1984, Stokes suffered the accident found to have occurred by Commissioner Reid. And we so hold.

We find no merit to First National's argument that Commissioner Reid's determination of the amount to be paid Stokes by the percentage of pre-injury wages was erroneous. This issue was firmly laid to rest by *Bowen v. Chiquola Mfg. Co.*, 238 S. C. 322, 120 S. E. (2d) 99 (1961).

We find no merit to First National's remaining exceptions.

The appealed order is affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.