515 S.E.2d 104

**David GETSINGER, Employee, Respondent,**

v.

**OWENS–CORNING FIBERGLAS CORP., Employer
and Self–Insurer, Carrier, Appellant.**

**No. 2956.**

Court of Appeals of South Carolina.

Submitted Feb. 9, 1999.
Decided March 8, 1999.
Rehearing Denied May 8, 1999.

Thomas Bailey Smith, of Smith Law Firm, of Pickens, for appellant.

Linda B. McKenzie, of Greenville, for respondent.

HOWELL, Chief Judge:

David Getsinger brought this action against Owens–Corning Fiberglas Corporation (Owens–Corning) to recover Workers' Compensation benefits. The single commissioner determined Getsinger had reached maximum medical improvement and that, due to his work-related physical injury and associated psychological problems, Getsinger had sustained a total loss of earning capacity. The commissioner awarded Getsinger 500 weeks compensation, offset by previous payments, and ordered Owens–Corning to pay all of Getsinger's past and future medical bills incurred from the treatment of his physical and

psychological problems. The full commission and the circuit court affirmed the commissioner's decision. Owens–Corning appeals. We affirm.

## FACTS

On August 17, 1990, Getsinger injured his right foot while at work at Owens–Corning. Getsinger was initially awarded a 30% disability to his right foot in June 1993. The disability award was increased by 10% in October 1995. The condition of his foot continued to deteriorate. On December 5, 1995, Getsinger's physician noted, "This gentleman has indeed worsened since our last visit and he is now with a 50 percent PPI to the right foot. It is not anticipated that he can return to work at any capacity. We will forward these comments to comp."

Getsinger described the pain he feels from his foot when he is at rest as "like a dull toothache." Even if he sits all day, he must elevate his foot because of the swelling. When he tried to roll a 55 gallon drum at work, he felt extreme pain. Often, the pain would not stop and his foot would swell. During the summer of 1995, the pain in Getsinger's foot was so bad that he was sometimes unable to walk.

Getsinger began to experience symptoms of depression in July 1995. He testified that his depression started when he learned the condition of his foot had deteriorated to the extent he might have to stop working at his current job. He stated he thought constantly about the pain in his foot and his inability to go to work. Getsinger testified that he did not want to go out, could not leave the house, and could not concentrate. At times he could not sleep, but at other times he wanted to sleep all day. On occasion, he has cried and has had suicidal thoughts.

At the urging of a nurse at Owens–Corning, Getsinger contacted Owens–Corning's employee assistance program because of his depression. He was immediately referred to Dr. Bamashmus, a psychiatrist. Dr. Bamashmus saw Getsinger every two weeks and prescribed medicine for the depression. At the time of the hearing, Getsinger continued to suffer from depression and pain and swelling in his foot and leg. Accord-

ing to Dr. Bamashmus, Getsinger is unable to work because of his psychological condition.

## DISCUSSION

In reviewing a decision of the Workers' Compensation Commission, the appellate court will not set aside the commission's findings "if they are supported by substantial evidence and not controlled by legal error." *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 536, 482 S.E.2d 577, 579 (Ct.App.1997). "Substantial evidence" is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the commission reached in order to justify its action. *See Lark v. Bi–Lo*, 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981).

Owens–Corning contends that in order for a mental injury to be compensable, an employee must prove that his or her mental injury was caused by unusual or extraordinary emotional stimuli regardless of whether the mental injury was accompanied by a physical injury.[1] We disagree.

In *Kennedy v. Williamsburg County*, 242 S.C. 477, 131 S.E.2d 512 (1963), the South Carolina Supreme Court recognized as compensable a prison guard's total disability resulting from schizophrenia caused by a head injury the guard suffered when he was attacked by two prisoners. Subsequently, the court held a mental injury unaccompanied by physical injury was compensable, because it was the result of unusual and extraordinary work conditions. *See Stokes v. First Nat'l Bank*, 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991). Finally, in *Estridge*, we held that "[w]here, as in *Kennedy*, the mental injury is *induced* by physical injury, it is not necessary that it result from unusual or extraordinary conditions of employment." 325 S.C. at 538, 482 S.E.2d at 580. Thus, "[m]ental injuries are compensable if ... induced *either* by physical injury ... *or* by unusual or extraordinary conditions of employment." *Id.* at 538, 482 S.E.2d at 580 (first ellipsis in original) (emphasis added) (quoting *Stokes v. First Nat'l*

---

1. Getsinger admitted that since August of 1990, nothing extraordinary or unusual had happened to him at work.

*Bank,* 298 S.C. 13, 21, 377 S.E.2d 922, 926 (Ct.App.1988), *aff'd,* 306 S.C. 46, 410 S.E.2d 248 (1991)).

In support of its argument, Owens–Corning directs our attention to language in the Court of Appeals' decision in *Stokes* noting that "there is no valid justification in such cases for distinguishing between mental disorders resulting from physical injuries and mental disorders brought about by emotional stimuli or stressors which are incident to unusual and extraordinary conditions in employment." *Stokes,* 298 S.C. at 14, 377 S.E.2d at 922–23. This language merely demonstrates that mental injuries induced by physical injury (physical-mental) and mental injuries not induced by physical injury but by the unusual and extraordinary conditions in one's employment (mental-mental) are both compensable. As explained above, physical-mental injuries do not need to be incident to an unusual and extraordinary condition of employment. *See Estridge,* 325 S.C. at 538, 482 S.E.2d at 580.

■■■ Owens–Corning next argues Getsinger failed to prove that his physical injury was the legal cause of his mental state, because the depression started almost five years after the physical injury. We disagree. "A [mental] condition which is induced by a compensable physical injury is ... causally related to that injury." *Estridge,* 325 S.C. at 538–39, 482 S.E.2d at 580–81. Therefore, we must determine whether there is substantial evidence that Getsinger's physical injury induced his mental injury.[2]

There is substantial evidence to support the commission's finding that Getsinger's compensable physical injury induced his mental injury. Prior to the accident, he had not suffered any problems with his leg or foot nor experienced any psychiatric problems. He testified his depression started when he was suffering pain in his foot and was worried about being able to work. In addition, Dr. Bamashmus testified that Getsinger's work-related physical injury precipitated his depression, that work was important to Getsinger, and that Getsinger's suicidal thoughts were "related to the fact that he is sitting at home, thinking about not being able to work anymore; related to the depression; related to the fact that

---

2. Owens–Corning admitted the physical injury to Getsinger's foot was compensable and caused a 50% impairment of that foot.

he's been actively working all his life and here he is sitting at home doing nothing." This evidence sufficiently establishes that Getsinger's foot injury caused his depression.

Moreover, contrary to Owens–Corning's argument, Getsinger's depression did not occur *suddenly* five years after the accident. The evidence indicates the psychological problems began when his physical injury worsened to the extent he was in constant dull pain with occasional extreme pain and realized he might not be able to work. The record clearly shows that Getsinger's physical injury has progressively worsened since the accident. He has had three surgeries on his foot and his impairment rating has increased from 30% in 1993, to 40% in 1995, and to the current 50% that Owens–Corning admits he has sustained. These facts, in conjunction with Dr. Bamashmus's testimony and Getsinger's dearth of depression problems before the accident, are evidence that the foot injury induced the later depression. Consequently, that the depression did not appear until five years after the accident is irrelevant.

Based on the above analysis, the circuit court's order is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.