Chief Justice TOAL.
Brandon Bentley (Appellant), a deputy sheriff with the Spartanburg County Sheriffs Department, alleged that he developed Post Traumatic Stress Disorder (PSTD) and depression after he shot and killed a suspect who attempted to assault him. An Appellate Panel of the Workers’ Compensation Commission (Appellate Panel) unanimously found that Appellant failed to meet his burden of proof in establishing a compensable mental injury that arose out of an “unusual or extraordinary condition” of employment for a Spartanburg County deputy sheriff. We affirm.
Facts/ Procedural Background
On October 21, 2009, Appellant was on road patrol when he was dispatched to a residence in Spartanburg following a call involving disturbances between neighbors. As he arrived at the scene, he saw a man in khaki shorts standing just outside the carport of the residence. He stepped out of his car and asked the man to approach him to talk. The man refused to cooperate and exchanged words with Appellant before walking toward Appellant with an umbrella raised in an “offensive posture.” Appellant issued several commands for the man to drop the umbrella. In response, Appellant claimed the man threatened to take Appellant’s gun and kill him. Appellant then fired one shot “center mass” at the man’s chest resulting in his death.
*421 Following this incident, Appellant began to suffer psychological symptoms including anxiety and depression and sought treatment at Post Trauma Resources in Columbia. Based on his psychological symptoms, his psychiatrist and psychologist concluded that Appellant was unable to work.
On March 10, 2010, Appellant filed a Form 50 to claim workers’ compensation benefits. After a hearing, the Single Commissioner found that the October 21, 2009 event was not an unusual or extraordinary condition of Appellant’s work, and Appellant had not suffered a compensable mental injury by accident arising out of his employment. The Commissioner noted that deputies received training on the use of deadly force and that Appellant admitted he knew he would sometimes be required to use deadly force in the course and scope of his employment. Appellant then appealed to the Appellate Panel, which affirmed the Commissioner’s Order and denied Appellant’s claim. Appellant filed an appeal and this case is before this Court pursuant to Rule 204(b), SCACR.
Issue
Whether the shooting and killing of a suspect by a deputy sheriff while on duty is an extraordinary and unusual employment condition such that mental injuries arising from that incident are compensable under the Workers’ Compensation Act.
Standard of Review
The South Carolina Administrative Procedure Act (APA) governs appeals from the decisions of an administrative agency. S.C.Code Ann. § 1-23-380 (Supp.2011); Lark v. Bi-Lo, Inc., 276 S.C. 130, 134-35, 276 S.E.2d 304, 306 (1981). Under the APA, an appellate court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. S.C.Code Ann. § 1-23-380(5). If the findings, inferences, conclusions, or decisions of that agency are “clearly erroneous in view of the reliable, probative and substantial evidence on the whole record,” a reviewing court may reverse or modify. Id. Substantial evidence is not a mere scintilla of evidence, nor evidence viewed blindly from one side of the case, but is evidence *422 which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached. Pratt v. Morris Roofing, Inc., 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).
Analysis
Appellant argues he sustained a compensable mental injury that arose from an extraordinary and unusual condition of employment. We disagree.
Workers’ compensation pays an employee benefits for damages resulting from personal injury or death by accident arising out of and in the course of the employment. S.C.Code Ann. § 42-1-310 (Supp.2011). In determining whether a work-related injury is compensable, the Workers’ Compensation Act (Act), S.C.Code Ann. §§ 42-1-10 to -19-10 (1976 & Supp.2011), is liberally construed toward the end of providing coverage rather than denying coverage in order to further the beneficial purposes for which it was designed. Shealy v. Aiken Cnty., 341 S.C. 448, 535 S.E.2d 438 (2000) (citation omitted). Any reasonable doubt as to the construction of the Act will be resolved in favor of coverage. Mauldin v. Dyna-Color/Jack Rabbit, 308 S.C. 18, 22, 416 S.E.2d 639, 641 (1992).
Some context regarding the evolution of mental damages in workers’ compensation will illuminate the framework which necessarily binds this Court in resolving this case. As set forth by Professor Larson in his treatise on workers’ compensation, work-related injuries fall into three categories: 1) mental stimulus causing physical injuries (mental-physical injuries), 2) physical stimulus causing mental injuries (physical-mental injuries), and 3) mental stimulus causing mental injuries (mental-mental injuries). Arthur Larson, Larson’s Workers’ Compensation Law § 56.06[3] (2011). Historically, given the suspicion surrounding mental injuries, courts and legislatures refused to award compensation for mental injuries, or if they did, required that covered mental injuries be accompanied by a physical manifestation. See id. at § 56.06[l][b]. A majority of states now recognize the compensability of purely mental-mental injuries, injuries without accompanying physical manifestation, although a large number of states, including *423 South Carolina, place heightened restrictions on recovery by requiring that the precipitating stressor be unusual and extraordinary compared with normal working conditions.[1] Id. at § 56.06[3]; Stokes v. First Nat’l Bank, 306 S.C. 46, 410 S.E.2d 248 (1991); Davis v. Workmen’s Comp. Appeal Bd., 561 Pa. 462, 751 A.2d 168, 170 (2000) (denying workers’ compensation to police officer suffering from PSTD because encountering traumatic events was normal for a police officer).
South Carolina’s standard for recovering benefits for mental-mental injury is codified in section 42-1-160 of the South Carolina Code, which provides:
(B) Stress, mental injuries, and mental illness arising out of and in the course of employment unaccompanied by physical injury and resulting in mental illness or injury are not considered a personal injury unless the employee establishes, by a preponderance of the evidence:
(1) that the employee’s employment conditions causing the stress, mental injury, or mental illness were extraordinary and unusual in comparison to the normal conditions of the particular employment; and
(2) the medical causation between the stress, mental injury, or mental illness, and the stressful employment conditions by medical evidence.
S.C.Code Ann. § 42-1-160 (emphasis added).[2]
Although we are constrained to decide this case according to the standard mandated by the General Assembly, we offer our *424 opinion that this standard should be updated to account for the scientific and technological progress in medicine and psychology, which have undermined the old public policy argument used to deny mental-mental recovery.
Historically, a lack of understanding about mental-mental injuries fueled the negative reaction toward allowing recovery. The traditional justifications for imposing barriers to recovery were that claims for mental-mental injuries were easier to falsify than claims for physical injuries, and any recovery for mental anguish damages must be limited with bright line rules lest the courts be flooded with litigation. See Frances C. Slusarz, Work Place Stress Claims Resulting from September 11th, 18 Lab. Law. 137 (Fall 2002); Jon L. Gillum, Note, Fear of Disease in Another Person: Assessing the Merits of an Emerging Tort Claim, 79 Tex. L. Rev. 227 (Nov. 2000). However, those in favor of allowing broader recovery point out that advances in medical science have made it easier for medical professionals to diagnose and verify the validity of mental injuries, enabling courts to weed out fraudulent claims. See Towns v. Anderson, 195 Colo. 517, 579 P.2d 1163 (1978) (finding that “the medical profession has made tremendous advances in diagnosing and evaluating emotional and mental injuries. While psychiatry and psychology may not be exact sciences, they can now provide sufficiently reliable information concerning causation and treatment of psychic injuries, to provide a jury with an intelligent basis for evaluating a particular claim.”); Eckenrode v. Life of Am. Ins. Co., 470 F.2d 1, 3 (7th Cir.1972) (citation omitted) (stating that mental anguish can be diagnosed and verified by health professionals). In addition, proponents note that claims of physical injury, especially in relation to damages for pain and suffering, can be as susceptible to fraud as mental-mental injuries, rendering it illogical to allow recovery for one while denying it for the other. Molien v. Kaiser Found. Hosps., 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 821 (1980) (noting the rule requiring mental injury be accompanied by physical injuries “encourages extravagant pleading and distorted testimony” by claimants trying to fit their emotional anguish claims into the *425 physical injury framework). We agree with these proponents for reform.
We do not believe that removing South Carolina’s heightened requirement for mental-mental recovery would result in a flood of litigation given the safeguards that the General Assembly has built into section 42-1-160.[3] S.C. Code Ann. § 42-1-160 (Supp.2011). Even without the requirement that all compensable mental-mental injuries must arise from employment conditions that are unusual and extraordinary, under current law, claimants must pass a causation test and show that the employment condition is the proximate cause of the mental injury. Id. § 42-l-160(B)(2). In addition, under section 42-1-160(0, mental-mental stress are not considered compensable if they result from any event which are “incidental to normal employer/employee relations including, but not limited to, personnel actions by the employer such as disciplinary actions, work evaluations, transfers, promotions, demotions, salary reviews, or terminations, except when these actions are taken in an extraordinary and unusual manner.” S.C.Code Ann. § 42-1-160. Consequently, when one considers that a claimant must show causation and that he is excluded from bringing claims that are “incidental to normal employer/employee relations,” the framework for recovery adequately errs on the side of caution even without requiring *426 that all mental-mental claims arise from unusual and extraordinary conditions of employment. Moreover, it has been argued that even if an observed increase in litigation results, it is the primary business of courts to redress wrongs. W. Page Keeton et ah, Posser and Keeton on the Law of Torts § 54, at 360 (5th ed. 1984) (“It is the business of the courts to make precedent where a wrong calls for redress, even if lawsuits must be multiplied — ”).
If South Carolina reforms section 42-1-160, it would not be alone. At least five states already do not require that the conditions of employment be unusual and extraordinary to be compensable.[4] Larson, supra, at § 56.06D[7]. We believe that in light of the safeguards already in place and the scientific progress made in our understanding and diagnosis of mental-mental injuries, the Powell framework as promulgated in 1989 is obsolete.[5] Removing the unduly restrictive barrier in mental-mental cases that requires employment conditions to be unusual and extraordinary would further South Carolina’s public policy of favoring coverage for injuries suffered at work, while not unleashing an uncontainable flood of litigation or unduly burdening business activities.
Nevertheless, we are interpreters not legislators and are bound by the language of section 42-1-160 as written. Citizens’ Bank v. Heyward, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925) (“The primary source of the declaration of the *427 public policy of the state is the General Assembly[, and] the courts assume this prerogative only in the absence of legislative declaration.”). Section 42-1-160 refers to conditions of employment and not the frequency of an event occurring during the course of employment. S.C.Code Ann. § 42-1-160(B)(7)- Furthermore, it requires those conditions to be “unusual or extraordinary.” Id. Unusual or extraordinary conditions refer to conditions of the particular job, not to conditions of employment generally. Shealy, 341 S.C. at 456, 535 S.E.2d at 442.
The parties do not contest that the October 21, 2009 incident, where Appellant, while on patrol, shot and killed a suspect, is the proximate cause of Appellant’s mental injury. S.C.Code Ann. § 42-l-160(B)(2); Tennant v. Beaufort Cnty. Sch. Dist., 381 S.C. 617, 674 S.E.2d 488 (2009) (claimant must show that “unusual or extraordinary conditions were the proximate cause of the mental disorder”). The only issue is whether the employment condition was extraordinary and unusual with respect to Appellant’s profession as a deputy sheriff.[6] Shealy, 341 S.C. at 456, 535 S.E.2d at 442.
In Stokes v. First National Bank, 306 S.C. 46, 48, 410 S.E.2d 248, 249 (1991), as a result of a merger and the resignation of one of plaintiffs managers, claimant’s work hours increased from approximately 45 hours per week to 60 hours per week in January 1984; to workdays of approximately 12 to 15 hours in July 1984; and then 16 to 18 hours after November 10,1984. This Court found that Stokes’s excessively increased workload constituted an unusual and extraordinary condition of employment which rendered his resulting nervous breakdown a compensable accident. Id. at 50, 410 5.E.2d at 250. It may be tempting to extrapolate that if excessive increases in work hours constitute an “extraordinary and unusual” condition of employment, then so too would killing a person in the course of duty. However, Shealy v. *428 Aiken County directs us not to compare apples and oranges, but rather to examine cases involving Appellant’s particular profession as a deputy sheriff or law enforcement officer. 341 S.C. 448, 456, 535 S.E.2d 438, 442 (2000) (unusual and extraordinary conditions refers to conditions to the particular job in which the injury occurs, not to conditions of employment in general).
In Shealy, the claimant worked as a deputy sheriff in Lexington County from 1981 to 1990. Id. at 452, 535 S.E.2d at 440. During this time, he developed depression and an alcohol problem, which led to his departure from his job. Id. In November 1990, the Aiken County Sheriff, aware of claimant’s alcohol problem, nonetheless, hired him to work as a “deep cover” narcotics agent. Id. The Aiken County Sheriffs Department hired deep cover agents to go to known drug locations, typically bars and nightclubs, to befriend drug dealers and other criminals in order to gain information, intelligence, and to make drug buys, which were then given to the police as evidence. Id. Deep cover work is extremely stressful and differs from regular police undercover work because agents do not wear a wire, are not operating under police surveillance, do not have access to police back up, and do not carry police identification. Id. In August 1992, following an incident with a drug dealer while working undercover, claimant believed that he was in danger due to constant death threats. Id. at 452-53, 535 S.E.2d at 441. On December 30, 1992, the sheriffs department dismissed him from his job when a new sheriff decided to eliminate the deep cover program. Id. According to claimant, the dismissal caused severe stress because he still faced death threats and would lose both his permit to carry a weapon and the protection of law enforcement. Id. Claimant was diagnosed with major depression, PTSD, anxiety, alcoholism, and panic disorder with agoraphobia. He sought workers’ compensation benefits, and the Single Commissioner awarded claimant benefits for aggravation of his preexisting alcoholism and psychological injury resulting from the extraordinary conditions of his employment. Id. at 454, 535 S.E.2d at 441. This Court agreed with the Commissioner finding that substantial evidence in the record demonstrated that claimant’s work conditions were unusual and extraordinary. Id. at 458, 535 S.E.2d at 444. We *429 held that the “combination of death threats, gun incidents with violent drug dealers, high tension confrontations, fear of being uncovered, and loss of security as a police officer constitutes unusual or extraordinary conditions of employment when they occur over several months.” Id. at 455, 535 S.E.2d at 442 (emphasis added).
Shealy is distinguishable from the case at hand. While it is expected that deep undercover work is dangerous and stressful, the combination of a serious death threat, claimant’s layoff, and claimant’s subsequent loss of police protection occurring over a period of several months elevated claimant’s employment conditions to extraordinary and unusual. Id. No such aggravating combination is present in this case where admittedly Appellant’s mental injuries result solely from the shooting of a suspect who threatened him on October 21, 2009.[7]
The use of deadly force is within the normal scope and duties of a Spartanburg County deputy sheriff. Claimant himself, upon direct questioning, confirmed that he knew that he would sometimes be required to use deadly force in his job. In addition, the Spartanburg County Sheriffs Office General Order 520.1 provides:
Deadly force may be used by officers only when they reasonably believe the action is in defense of human life (the officer’s or others).... When any arrestee initiates action to cause physical harm, there should be no hesitancy in using such force as necessary to bring that person under control.
Deputies are also required to attend the South Carolina Criminal Justice Academy where they are instructed on the use of firearms and deadly force, and each deputy receives annual training in the same area. Moreover, Spartanburg County Sheriff Chuck Wright testified that when he became a deputy sheriff, he was aware of the possibility that he might be required to fire his weapon to shoot and kill, and that all deputies are aware of this possibility through their training.
*430 Appellant would like this Court to reframe the issue, take it out of its particular employment context, and ask “whether killing another human being is ‘unusual.’ ” This approach, however, contradicts Shealy’s command to look at conditions of the particular employment in which the injury occurs and not to conditions of employment in general. 341 S.C. at 456, 535 S.E.2d at 442. Appellant also argues that because statistics show that the killing of suspects by a Spartanburg County deputy sheriff occurred about once a year, this meant that shooting and killing was an unusual and extraordinary event.[8] However, in defining what constitutes unusual and extraordinary, the statute and our case law speak of conditions of employment and not the frequency of an event occurring. S.C.Code Ann. § 42-1-160; Shealy, 341 S.C. at 456, 535 S.E.2d at 442. Moreover, if the frequency of killing is the decisive factor, then it is difficult to put a precise number on how many suspects must be killed before the killing ceases to be extraordinary and unusual. Under our case law, we cannot ignore the particular employment context and hold that killing a suspect is generally and inherently extraordinary and unusual. Shealy, 341 S.C. at 456, 535 S.E.2d at 442. Thus, we agree with the Appellate Panel that the issue this Court must decide is whether or not using deadly force, which may result in fatalities, is a standard or necessary condition of a deputy sheriffs job, not how frequently the use of deadly force results in fatalities.
We hold that Appellant’s testimony that he “might be in a situation where he might have to shoot someone,” similar *431 testimonies by Sheriff Wright that officers were aware of the possibility that they might be required to shoot and kill, Appellant’s training in the use of deadly force, and the department’s policy addressing when deadly force should be used constitutes substantial evidence supporting the Appellate Panel’s conclusion that the October 21, 2009 incident was not extraordinary and unusual, but was a standard and necessary condition of a deputy sheriffs job.
Conclusion
For the foregoing reasons, we affirm the Appellate Panel’s holding.
AFFIRMED.
PLEICONES and KITTREDGE, JJ., concur.
HEARN, J., dissenting in a separate opinion in which BEATTY, J., concurs.
Justice HEARN.
I unequivocally join in the majority’s call for the General Assembly to revisit Section 42-l-160(B) of the South Carolina Code (Supp.2010). As the majority thoroughly explains, our present “mental-mental” statute is an anachronism and the time has come for it to be updated based on the current understanding of mental injuries. However, I part company with the majority’s conclusion that Deputy Sheriff Brandon Bentley has failed to prove that shooting and killing another human being in the line of duty is not an unusual or extraordinary circumstance for a law enforcement officer, which is the standard we must apply. I believe that it is and would reverse, holding the Appellate Panel committed an error of law in ruling otherwise. I therefore respectfully dissent.
As noted by the majority, beginning with the court of appeals’ decision in Stokes v. First National Bank, 298 S.C. 13, 377 S.E.2d 922 (Ct.App.1988), the compensability of a mental injury caused solely by emotional distress has been analyzed consistent with the standard of compensability for heart attack injury cases. This Court, in Powell v. Vulcan Materials Co., 299 S.C. 325, 384 S.E.2d 725 (1989), specifically approved the court of appeals’ decision to adopt the heart attack standard — unusual or extraordinary conditions of employment — to determine compensability in cases of mental- *432 mental injuries, and quoted this from the Stokes opinion: “ ‘[Mjental or nervous disorders resulting from either physical or emotional stimuli are equally compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment.’ ” Id. at 327, 384 S.E.2d at 726 (quoting Stokes, 298 S.C. at 22, 377 S.E.2d at 927). In 1996, the General Assembly, in response to this developing case law, amended section 42-1-160 to limit recovery for purely mental injuries to situations where “it is established that the stressful employment conditions causing the mental injury were extraordinary and unusual in comparison to the normal conditions of the employment.” 1996 Act No. 424 § 2.
Applying the statute to this case requires us to discern the meaning of unusual and extraordinary in the context of the responsibilities of a law enforcement officer. The majority correctly defines “extraordinary” as “out of the ordinary, exceeding the usual, average, or normal measure or degree; beyond or out of the common order, method, or rule; not usual, regular or of a customary kind; remarkable; uncommon; rare; employed for an exceptional purpose or on a special occasion.” Black’s Law Dictionary 586 (6th ed. 1990). Additionally, it defines “unusual” as “uncommon; not usual; rare.” Id. at 1540. Therefore, under the plain language of section 42-1-160, Deputy Sheriff Bentley should be able to recover if shooting and killing another human being in the line of duty is not a common occurrence or if it is beyond what is ordinary. The majority finds, on the other hand, primarily because all officers are trained for this very eventuality, that it cannot be unusual or extraordinary. Thus, the majority equates a mere possibility of an event occurring with it being usual and ordinary. With that analysis, I cannot agree, because I believe it is contrary to the plain language of the statute and it improperly conflates the standard of compensability for mental-mental injuries with the concept of foreseeability.
This record is replete with evidence that Deputy Sheriff Bentley, like all law enforcement officers, was trained to kill a suspect in the line of duty, if his own life or the life of another was in jeopardy. However, it is also undisputed that despite this preparation, the vast majority of law enforcement officers fortunately never have to take this grave step; indeed, many *433 never even draw their gun to fire in the course of their professional lives. In this regard, the testimony of Deputy Sheriff Bentley’s boss, Sheriff Chuck Wright, is particularly compelling. Sheriff Wright testified that in his twenty-two years in law enforcement — seventeen as a patrol officer and five as sheriff — he never shot someone in the line of duty. He also testified that during the prior six years in Spartanburg County, a suspect had been shot and killed by a deputy six times, or once per year, on average. Moreover, when an officer shoots a suspect, an in-house and a SLED investigation are triggered, and significantly, the officer is required to take administrative leave and to see the department’s psychologist. In response to the question as to whether his deputies rarely have to use deadly force, Sheriff Wright responded: “It’s not an everyday occurrence, thank God.” It is difficult to imagine clearer testimony on whether an event is a common occurrence or is out of the ordinary, consistent with the definitions noted above.
While I do not suggest that we define what is unusual and extraordinary only by what is rare, I do believe that the sheer rarity of this situation is a factor to consider in determining whether it is unusual and unexpected. Indeed, this is even borne out by the definitions of extraordinary and unusual employed by the majority, both of which contemplate an event being a possibility yet still extraordinary and unusual. See Black’s Law Dictionary 586 (6th ed. 1990) (defining “extraordinary” as “out of the ordinary, exceeding the usual, average, or normal measure or degree; beyond or out of the common order, method, or rule; not usual, regular or of a customary kind; remarkable; uncommon; rare; employed for an exceptional purpose or on a special occasion”); id. at 1540 (defining “unusual” as “uncommon; not usual; rare”). Because the Appellate Panel did not take these ordinary definitions into consideration, it committed an error of law. Under the proper standard, the evidence unquestionably reveals that shooting and killing a suspect is both unusual in terms of the frequency of such an event and extraordinary in that it is not a common occurrence in the professional life of a police officer. I therefore believe the heightened burden has been satisfied. To the extent that section 42-l-160(B) would preclude Deputy Sheriff Bentley from recovering, this case perfectly illustrates the problem with the present standard. I find it difficult to *434 fathom, let alone countenance, a rule which would allow Deputy Sheriff Bentley to recover workers’ compensation if he had tripped and fallen and injured his leg while drawing his gun on this suspect, yet does not permit him to recover for the very real mental trauma he undeniably suffered by shooting and killing the man.
In Shealy v. Aiken County, 341 S.C. 448, 455-6, 535 S.E.2d 438, 442 (2000), which involved the compensability of injuries for mental distress for a “deep cover” narcotics officer, we stated: “In determining whether a work-related injury is compensable, the Workers’ Compensation Act is liberally construed toward the end of providing coverage rather than noneoverage in order to further the beneficial purposes for which it was designed.” The majority, however, loses sight of this lodestar of workers’ compensation law and interprets the phrase “extraordinary and unusual” in a manner which is not only contrary to the plain meaning of the words used, but also defeats coverage. Cast against the proper legal canvas, I would hold that Deputy Sheriff Bentley’s mental injuries— injuries which are admitted and indisputably resulted from this necessary yet regrettable event — are compensable because while shooting and killing a suspect in the line of duty may have been something he was trained to do, it was clearly an unusual and extraordinary part of his job as a law enforcement officer.
BEATTY, J., concurs.

. Larson indicated that at least 29 states now recognize mental-mental injuries. Larson, supra, at § 56.06[3].

. The standard codified by S.C.Code Ann. § 42-1-160 (Supp.2011) for a mental-mental injury is known as the "heart attack standard.” See Powell, 299 S.C. at 327, 384 S.E.2d at 726 ("Mental or nervous disorders resulting from either physical or emotional stimuli are equally compensable provided the emotional stimuli or stressors are incident to or arise from unusual or extraordinary conditions of employment.”); Stokes v. First National Bank, 298 S.C. 13, 377 S.E.2d 922 (Ct.App. 1988). A heart attack suffered by an employee constitutes a compensable accident if it is induced by unexpected strain or overexertion in the performance of his duties of employment, or by unusual and extraordinary conditions in employment. Bridges v. Housing Auth., City of Charleston, 278 S.C. 342, 295 S.E.2d 872 (1982). However, if a heart attack results as a consequence of ordinary exertion that is required in performance of employment duties in an ordinary and usual manner, *424 and without any untoward event, it is not compensable as an accident. Shealy, 341 S.C. at 457, 535 S.E.2d at 443 (citation omitted).

. California’s experience has shown that liberalizing mental-mental recovery too broadly could indeed unintentionally unleash a flood of litigation that raises costs, burdens the courts, and unduly interferes with the hiring and firing of workers. Larson, supra, at § 56.06[l][a]. In Albertson’s Inc. v. Workers' Compensation Appeals Board, 131 Cal. App.3d 308, 182 Cal.Rptr. 304 (1982), the California Court of Appeals ruled that the compensability for mental-mental injuries could be judged purely on a plaintiffs subjective perception of stress at work and not objective reality. This overly broad holding dramatically increased the workers’ compensation claims that were compensable so that by 1986, the number of claims increased nearly seven-fold along with the expenses to litigate those claims. Larson, supra, at § 56.06[l][a]. In an effort to control costs, the California legislature reversed course and enacted a series of reforms that made it tougher to recover for mental-mental damages. Id. South Carolina has not and should not allow recovery based on a claimant’s subjective perception of stress as California did in 1982. Id. However, removing the requirement that the employment condition be unusual and extraordinary in order to recover is not the same as what was done in California, and would not result in a flood of litigation given the safeguards already built into section 42-1-160. S.C.Code Ann. § 42-1-160.

. Those five states are Hawaii, Michigan, New Jersey, New York, and Oregon. Larson, supra, at § 56.06D[7].

. We note that South Carolina's requirement that in mental-mental cases employment conditions causing the mental injury must be unusual and extraordinary was judicially created before being legislatively adopted. In Powell v. Vulcan Materials Co., 299 S.C. 325, 327, 384 S.E.2d 725, 726 (1989), this Court applied the "heart attack standard” to mental-mental injuries and recognized that mental-mental injuries that arose from extraordinary and unusual conditions of employment are compensable. See n. 2, supra. In 1989, when the Court decided Powell, section 42-1-160 of the South Carolina Code did not specifically address mental-mental injuries nor require that they arise from extraordinary and unusual conditions of employment. See S.C.Code Ann. § 42-1-160 (1976 & Supp.1989). Only in 1996 did the legislature amend section 42-1-160 to statutorily adopt Powell’s framework for determining the compensability of mental-mental injuries. See S.C.Code Ann. § 42-1-160 (Supp.1996).

. Black's Law Dictionary defines "extraordinary” as "out of the ordinary, exceeding the usual, average, or normal measure or degree; beyond or out of the common order, method, or rule; not usual, regular or of a customary kind; remarkable; uncommon; rare; employed for an exceptional purpose or a on a special occasion.” Black’s Law Dictionary 586 (6th ed. 1990). “Unusual” is defined as "uncommon; not usual; rare.” Id. at 1540.

. As to whether the incident was an extraordinary and unusual event, Appellant presented letters from his psychiatrist and psychologist opining that it was, while Respondents presented a letter from an expert vocational consultant and certified vocational evaluator opining it was not. We note these opinions, but are ultimately persuaded by other factors in this case, which we discuss in the body of this opinion.

. This same frequency argument has been adopted by the dissent. Furthermore, the dissent finds it “difficult to fathom, let alone countenance, a rule which would allow Deputy Sheriff Bentley to recover workers’ compensation if he had tripped and fallen and injured his leg while drawing his gun on this suspect, yet does not permit him to recover for the real mental trauma he undeniably suffered by shooting and killing the man.” We are deeply sympathetic to the views expressed in the learned dissent. While we certainly echo the dissent's concerns in our call for reform, we note that the hypothetical that the dissent employs involves a physical injury that would be compensable because it is not constrained by § 42-1-160, which only places barriers to recovery in cases involving mental-mental injuries. Here, however, we are dealing with a mental-mental injury and are bound by the heightened statutory restriction that the conditions of employment must be unusual and extraordinary.