19772

Charles R. DYKES, Respondent, v. DANIEL CONSTRUCTION COMPANY, and United States Fidelity and Guaranty Company, Appellants.

(202 S. E. (2d) 646)

*Bernard Manning, Esq.,* of Columbia, *for Appellants,*

*Messrs. Gressette and Gressette,* of St. Matthews, *for Respondent,*

February 12, 1974.

LEWIS, Justice:

This is an appeal by the employer and insurance carrier from an order of the lower court affirming an award of the South Carolina Industrial Commission in favor of the employee (respondent).

Respondent sustained a compensable injury to his left eye on January 11, 1965. Appellants accepted liability and furnished all medical care and treatment required under the South Carolina Workmen's Compensation Law, until September 23, 1971, at which time a hearing was held by a member of the Industrial Commission to determine the

nature and extent of respondent's disability, whether an award should be made for disfigurement, and whether he was entitled to further medical benefits. This resulted in an award by the Hearing Commissioner on June 23, 1972, subsequently affirmed by the full commission and the lower court, holding that the injury to respondent's left eye had resulted (1) in serious head and facial disfigurement, (2) in permanent disability of one hundred (100%) percent loss of vision in the eye, (3) the need for further medical care. While the injury required considerable medical treatment, the respondent sustained no temporary total disability.

Pursuant to the foregoing findings, appellants were ordered to pay (1) fifteen hundred ($1500.00) dollars for disfigurement, (2) the statutory amount for total loss of vision in the left eye, and (3) charges for further medical care as necessary. Appellants challenge each item of the award upon the grounds that there was no evidence to sustain them and that, in any event, the Commission failed to make the required supporting findings of fact.

In reviewing the record to determine the foregoing issues, we are governed by the well settled principles that (1), in the discharge of its duties as the arbiter of the facts, the Industrial Commission has the duty to make specific findings on all issues, and to do so with sufficient definiteness and detail to enable the appellate court to properly determine whether the findings of fact are supported by the evidence and whether the law has been properly applied to these findings; and (2) the factual findings of the Industrial Commission are binding on appeal, if supported by any competent evidence. *Drake v. Raybestos-Manhattan, Inc.,* 241 S. C. 116, 127 S. E. (2d) 288. Also in accordance with settled principles, the facts and inferences to be drawn therefrom are viewed and stated in the light most favorable to respondent.

Appellants first contend that there was no evidence to sustain the award for serious head and facial disfigurement,

in that there was no evidence of any disfiguring feature about the respondent's head or face. The Hearing Commissioner found that respondent had sustained an injury to his left eye which resulted in serious head and facial disfigurement, but did not include in the record or the award a description of the appearance of respondent's eye. The only related testimony, other than a view of respondent, was a statement by respondent's wife that the condition of the eye had caused a change in his appearance.

Upon review of the award, respondent was observed by the full Commission and the observations of the Commission were included in the record as the basis for the affirmance of the award for disfigurement. The Commission used the following descriptive terms with reference to the appearance of the left eye: "a little puffy"; "redness in the left eye"; "the eye lash was flashing or closing and opening, . . . ten to fifteen times more than the average person"; "the left eye has a much smaller slit . . . than the right eye"; and "droopiness " or "squinting."

Appellants argue that the record contains no showing of disfigurement, other than the description of respondent's appearance by the full Commission, and that such description was not evidence. We agree that the Commission's description of respondent's appearance was not evidence. We do not agree however that there was no evidence before the Commission to show disfigurement. Respondent's body was in evidence and, as stated in *Shillinglaw v. Springs Cotton Mills,* 209 S. C. 379, 40 S. E. (2d) 502, this was the best evidence to be had on the issue.

The detailed description of respondent's appearance, as observed by the Commission, was properly included in the record so that the court, on review, could determine the propriety of the award for disfigurement. *McCoy v. Easley Cotton Mills,* 218 S. C. 350, 62 S. E. (2d) 772.

Appellant contends, however, that the Commission's observations should have been included as a part of its decision, and that the failure to do so made the findings inadequate to support the award. The fact that such description was included as a part of the record and not recited as a part of the formal decision of the Commission is of no consequence. The appearance of respondent, as viewed by the Commission, is the significant inquiry and not where, perchance, the description of his appearance might be placed in the record.

Neither did the observation of respondent by the Commission, with the Commission's description of his appearance, constitute the taking of additional testimony, as argued by appellant. It was nothing more than a consideration of evidence which was a part of the record before the Hearing Commissioner.

The contention that there was no evidence to sustain the award for disfigurement and that the findings of the Commission thereabout were inadequate are without merit.

Appellant also contends that there was no evidence to sustain the finding of the Commission that the injury to respondent "resulted in . . . one hundred (100%) percent loss of vision in the left eye."

It is conceded that respondent sustained an injury while about his employment, and the question presented concerns only the injured left eye.

Respondent had no trouble with his vision prior to the injury in 1965. Since the injury, the vision in his left eye has been impaired from a dendritic central corneal ulcer which is characteristically attributable to a Herpes Simplex virus infection, the virus entering the eye through a corneal injury. He also has corneal tissue changes secondary to the Herpes Simplex infection, which are now permanent and chronic.

Respondent has been seen and treated by several doctors, one of whom testified. He testified that respondent required

continued medication to stabilize the eye condition. The purpose of the medication is to relieve the pain and keep the cornea comfortable and to keep the intraocular pressure from rising. In spite of the medication, the condition of the eye is worse at times than others. The doctor testified as to various visual readings of the injured eye during the period of treatment. These readings ranged from 20/40 to 20/100, with vision correctable on one occasion to 20/20-3 and at another to no better than 20/40. On the basis of vision ranges from 20/40 to 20/70, the doctor estimated, at one time, a visual loss in the injured eye at 23%. He had on another occasion found a greater reduction in visual loss and a reading at that time of 20/100. The medical testimony is also to the effect that the condition in the eye will possibly further deteriorate to the point where a corneal transplant would be required.

Respondent testified that there were times when he had no vision in his injured eye; and that "it gets so blurred until it bothers the right eye," causing him to stumble over things. He was a pipe welder and continued in that capacity a short time after the injury, but was finally taken off of that job because, as he expressed it, he "couldn't see."

Respondent's right to compensation arises under Section 72-153(18) of the 1962 Code of Laws, which provides for payment to an injured employee for total, or partial, "loss of vision of an eye." In such cases, compensation depends upon functional loss rather than upon the loss of earnings. *Hoke v. Cherokee County*, 216 S. C. 376, 58 S. E. (2d) 330. Therefore, since compensation is not based upon loss of earnings, but is payable when the member or its function is impaired or lost, the testimony that the loss of vision in the injured eye might be reduced by the use of corrective lenses is not properly considered in determining whether respondent has suffered a loss of vision in that eye, within the meaning of Code Section 72-153 (18). *Hollman v. City of Raleigh, etc.,* 273 N. C. 240, 159 S. E. (2d) 874.

Annotations dealing with the subject of loss of eyesight or vision under Workmen Compensation statutes are found in 8 A. L. R. 1324; 24 A. L. R. 1466; 73 A. L. R. 706; 99 A. L. R. 1499; and 142 A. L. R. 822.

The specific percentage of eyesight that must be lost before an employee has a total loss of vision is not set forth in the statutes. "Total loss of vision" means for Workmen's Compensation purposes, and does not necessarily mean complete loss of visual perception. If sight is destroyed to the extent that there remains no vision useful in performing any employment available to the claimant, there is a "total loss of vision" in the eye even though some sight remains. Since there is no percentage of normal vision that can be used as a standard for determining total loss of vision, each case must be determined upon its particular facts. 99 C. J. S. Workmen's Compensation § 316.

The evidence sustains the finding of the Commission that respondent suffered a total loss of vision in his left eye. The medical testimony is to the effect that the condition of the eye is chronic and permanent and is characterized by periods of deterioration when pain and pressure must be relieved by medication. The present stabilized condition of the eye is largely due to the continued use of medication and, at times, even with medication, the loss of vision is almost total. The medical testimony is clear that medication will be necessary for the remainder of respondent's life to relieve the pain and pressure. At no time is the vision in the eye normal. This testimony is consistent with that of respondent to the effect that there are periods when he has no vision in the injured eye and was relieved of his usual duties as a welder because he could not see.

It is inferable from the testimony that, while there are periods when the loss of vision in respondent's eye is partial, there are other periods when there is no useful vision; and the effect of the variances in visual acuity, from partial or almost total, are such as to render sight in the eye so un-

reliable as to destroy its usefulness for any industrial purpose. This would constitute a "total loss of vision" in the eye, within the meaning of the Workmen's Compensation Law.

Appellant argues, however, that the testimony of respondent and his wife, as to respondent's inability to see, should be disregarded because the question of determining the percentage of loss of vision is of such a technical and complicated nature that only testimony of experts should be relied upon. We find no merit in this contention.

The testimony of respondent and his wife was admitted without objection and it was for the Commission to give it such probative value as it deemed proper under the circumstances. *Rice v. Brandon Corporation,* 190 S. C. 229, 2 S. E. (2d) 740.

Irrespective however, we find no basic inconsistency between the testimony of the medical expert and that of the respondent. While the doctor estimated that at one time, respondent's loss of vision in the left eye was 23% based upon visual readings of 20/40 to 20/70, he also testified that the condition of the eye varied and on another occasion he found a reading of 20/100. In view of the testimony that the pain and pressure in the eye varied and affected the vision, the doctor's testimony was not necessarily inconsistent with that of respondent that, at times, the condition of the eye was such that he had no useful vision in it. The Commission could, therefore, soundly conclude that respondent had a total loss of vision in the eye for industrial purposes, without disregarding the expert testimony.

Appellant next contends that the Commission erred in requiring that further medical care be furnished to respondent because (1) there was no finding that additional medical care would tend to lessen the period of disability and (2) there was no evidence to support such award.

Code Section 72-305 provides that an employer shall furnish to an injured employee:

"Medical, surgical, hospital and other treatment including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from the date of an injury to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability . . . In case of a controversy arising between employer and employee, the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary."

We pointed out in *Williams v. Boyle Construction Co.*, 252 S. C. 387, 166 S. E. (2d) 550, that, under the foregoing statute there is no liability on the part of an employer to furnish medical treatment to an injured employee beyond ten weeks from the date of injury unless in the judgment of the Commission it "will tend to lessen the period of disability."

While the Commission made no specific finding, in the statutory language, that additional medical treatment "will tend to lessen the period of disability," it did find that "further medical care is necessary" and should be furnished "under Section 72-305." Implicit in such award is the finding that additional medical treatment will tend to lessen the period of disability, for on no other ground could liability for additional treatment be based under the statute. The findings in this regard are, therefore, sufficiently definite to enable the court to properly reach the question of whether there is evidence to sustain liability of appellants for the additional medical treatment ordered to be furnished to respondent.

The record clearly supports the finding that further medical treatment is necessary. The doctor testified that the condition of the eye was such that respondent would have to remain under the care of an ophthalmologist the remainder of his life and would require the continued use of medication to relieve pain and pressure in the

eye. It is inferable that, without medical treatment and medication, the pain in the eye would become incapacitating. We agree with the conclusion of the lower court that "although claimant has sustained a 100% loss of vision in his left eye and is presently employed, without the continuing treatment and medication, he would no doubt sustain a loss of wages through inability to function properly." This testimony sustains the conclusion that further medical treatment "will tend to lessen the period of disability" of respondent, within the meaning of the quoted provisions of Code Section 72-305.

Finally, appellant charges that the lower court erred in refusing to include in the appeal record certain correspondence relating to the consideration of the issue of disfigurement by the full Commission. We have carefully reviewed the excluded matters without effect upon our decision. In view of our affirmance of the judgment of the lower court, further consideration of this phase of the appeal would serve no useful purpose.

Judgment affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.