514 S.E.2d 593

**George DODGE, Respondent,**

**v.**

**BRUCCOLI, CLARK, LAYMAN, INC. and Companion Property and Casualty Insurance Company, Appellants.**

No. 2942.

Court of Appeals of South Carolina.

Heard Sept. 3, 1998.

Decided Feb. 16, 1999.

Rehearing Denied June 5, 1999.

---

576

E. Ros Huff, Jr., of Huff & Cauthen, of Irmo; and Rose D. Manos, of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for appellants.

Andrew N. Safran, of Lourie & Safran, of Columbia, for respondent.

CONNOR, Judge:

Bruccoli, Clark, Layman, Inc. and its insurance carrier, Companion Property and Casualty Insurance Company (collectively referred to as Bruccoli), appeal the circuit court's reversal of the South Carolina Workers' Compensation Commission ruling that George Dodge was no longer entitled to additional medical benefits under S.C.Code Ann. § 42-15-60 (1985). We affirm in part, reverse in part, and remand.

## FACTS

George Dodge was a computer programmer at Bruccoli. In 1989 Dr. Parrott performed surgery on Dodge for a spinal stenosis and a herniated disc with right radiculopathy into the leg. Following this surgery Dr. Parrott prescribed Tylenol

# 3 for his pain. The injury prompting the surgery was not work-related.

In 1990, while recovering from surgery, Dodge re-injured his back at work by carrying a laser printer up two flights of stairs and lifting it onto a table. Following the re-injury, Dodge continued to experience back and leg pain and continued to receive Tylenol # 3 for pain. He returned to Dr. Parrott for treatment. In March of 1990, Dr. Parrott performed a laminectomy, a nerve root decompression, and a diskectomy. After the March surgery, Dodge noticed the pain in his leg became worse. In June of 1991, Dr. Parrott assigned Dodge a fifteen percent impairment rating, which represented a ten percent impairment from the first surgery and an additional five percent for the second surgery.

In September of 1991, Dr. Paysinger performed a hemilaminectomy and removed a herniated disc. Dodge continued to experience pain in his right leg after the surgery. Dr. Paysinger assigned Dodge a ten percent impairment rating in December of 1991.

To assist Dodge in dealing with his pain, Dr. Paysinger referred him to Baptist Medical Center's Pain Management Program. Dr. Redmond oversaw Dodge's care in the program from December of 1991 until September of 1992. In a report dated September 8, 1992, Dr. Redmond found Dodge had reached maximum medical improvement and assigned a thirty percent impairment rating to the lumbar spine. Under Dr. Redmond's care Dodge returned to work in January of 1992. At this time he reduced his narcotic use by fifty percent (six Tylenol with codeine per day down to three). The pain therapy did not affect Dodge's level of pain but taught Dodge coping skills. Dodge rationed his pain killers so he could go to work.

After completion of the pain management program, Dr. Redmond referred Dodge to Dr. Borucki for continued treatment and medication monitoring. Nonetheless, Dodge again contacted Dr. Redmond asking for a prescription for Tylenol # 3. Dr. Redmond wrote "... I am not inclined to continue providing him with Tylenol # 3. He has been a difficult patient to manage and has frequently requested more Tylenol # 3 than that which I think is appropriate."

However, Dr. Redmond stated in his deposition that Dodge required an appropriate amount of pain medication to maintain his level of function. He opined Dodge would probably need treatment and maintenance medication for the rest of his life or his period of disability would increase. In a report he wrote: "He has continued to work and function while taking this medication, and therefore, there is some limited justification for this." Dr. Borucki agreed with Dr. Redmond's assessment that Dodge required continued medication and treatment to maintain his level of functioning.

The procedural history of this case is somewhat complicated. The single commissioner found Dodge had reached maximum medical improvement in September of 1992, and assigned him a forty-five percent permanent partial disability to his back. The commissioner determined Dodge was not entitled to further medical benefits because he had reached maximum medical improvement.

The full commission affirmed the commissioner's decision but amended the order. The commission deleted the portion of the order which eliminated all medical treatment after Dodge reached maximum medical improvement. The commission found Dodge eligible for future medical treatment pursuant to S.C.Code Ann. § 42–17–90 (1985), which enables the commission to review a claimant's compensation award in the event of a change of condition.

The circuit court reversed and remanded the case to the commission to award Dodge continued medical benefits for medication and treatment. The court found the commission erred as a matter of law in finding that Dodge's entitlement to medical benefits pursuant to S.C.Code Ann. § 42–15–60 (1985) terminated on the date he reached maximum medical improvement. The court further held the evidence in the record "unequivocally indicates" that Dodge requires the additional medical treatment and medication in order to remain gainfully employed.

Pursuant to the circuit court's mandate, the commission issued an amended order in September of 1995. The commission awarded Dodge further medical treatment and medication which would prevent his partially disabling condition from

becoming incapacitating and lessen the ultimate period of disability.

Bruccoli appealed to the Supreme Court from the circuit court's order and the commission's amended order. That Court dismissed the appeal as interlocutory. Subsequently, a second circuit court judge reviewed the orders. He remanded the case to the commission for the commission to enter detailed factual findings and legal conclusions in conformity with the initial circuit court order.

In February of 1997, in compliance with that order, the commission issued an amended order awarding Dodge continuing medical benefits and finding as a matter of law that section 42–15–60 provided for ongoing treatment and medication as long as such would lessen the period of disability. The commission specifically found Dodge would not be working but for his receipt of the additional medical treatment and medication. The circuit court affirmed the commission's order. Bruccoli appeals.

Although the appeal procedure necessitated the two additional circuit court orders, Bruccoli's appeal is directed to the initial circuit court order which reversed and remanded the case to the commission to award Dodge continued medical benefits for medication and treatment.

## DISCUSSION

■ Bruccoli argues the circuit court improperly applied the substantial evidence test in reversing the commission's factual findings. The court determined the commission committed an error of law by failing to award benefits under section 42–15–60 when the evidence "unequivocally indicate[d]" the medication and treatment tended to lessen Dodge's period of disability within the meaning of section 42–15–60.

■ The circuit court correctly held the commission erred as a matter of law in concluding Bruccoli was no longer required to pay Dodge's medical benefits because he reached maximum medical improvement on September 8, 1992. Section 42–15–60 of the South Carolina Code provides in pertinent part:

Medical, surgical, hospital and other treatment, including medical and surgical supplies as may reasonably be required, for a period not exceeding ten weeks from the date of an injury to effect a cure or give relief and *for such additional time as in the judgment of the Commission will tend to lessen the period of disability* and, in addition thereto, such original artificial members as may be reasonably necessary at the end of the healing period shall be provided by the employer. In case of a controversy arising between employer and employee, the Commission may order such further medical, surgical, hospital or other treatment as may in the discretion of the Commission be necessary.

S.C.Code Ann. § 42–15–60 (1985) (emphasis added). This section clearly "allows the Commission to award medical benefits beyond 10 weeks from the date of injury only where the Commission determines such medical treatment would tend to lessen the period of disability ." *Sanders v. Litchfield Country Club,* 297 S.C. 339, 344, 377 S.E.2d 111, 114 (Ct.App.1989); *see Williams v. Boyle Constr. Co.,* 252 S.C. 387, 390, 166 S.E.2d 550, 551 (1969) (There is no liability on an employer to furnish medical treatment for an additional time beyond the ten week period unless it "will tend to lessen the period of disability.").

"Disability" is defined in the South Carolina Workers' Compensation Act as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." S.C.Code Ann. § 42–1–120 (1985); *Rice v. Froehling & Robertson, Inc.,* 267 S.C. 155, 159, 226 S.E.2d 705, 706 (1976) (interpreting S.C.Code of 1962 § 72–305, the precursor to section 42–15–60). Section 42–15–60 "does not by its terms equate an employer's liability for medical treatment to any other period of liability, for income compensation or otherwise." *Rice,* 267 S.C. at 159, 226 S.E.2d at 706. The statute defines "the period of disability in terms of the time period in which the employee is statutorily incapacitated." *Id.* Thus, under section 42–15–60 "[t]he employer is liable for medical treatment which will tend to lessen the time in which injury renders an employee incapable 'to earn the wages which the employee was receiving at the time of injury in the same or other employment.'" *Id.*

Section 42–15–60 specifically refers to the term "disability" and makes no reference to "maximum medical improvement." Given the statutory language and our Supreme Court's construction of it, a finding that Dodge reached maximum medical improvement had no bearing on the determination of whether Bruccoli was liable for medical treatment beyond the ten week time period. "Maximum medical improvement" is a distinctly different concept from "disability."

"Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). However, the fact a claimant has reached maximum medical improvement does not preclude a finding the claimant still may require additional medical care or treatment. *See Scruggs v. Tuscarora Yarns, Inc.*, 294 S.C. 47, 362 S.E.2d 319 (Ct.App.1987) (substantial evidence supported a finding of maximum medical improvement despite the claimant continuing to receive physical therapy). Although this medical care or treatment may not reduce the claimant's degree of physical impairment, it may "tend to lessen the period of disability." *See Rice*, 267 S.C. at 162, 226 S.E.2d at 708 (although additional operations which claimant sought to eliminate necessity of pain medication and to reduce the chances of additional physical complications would not change claimant's physical condition as a quadriplegic, the operations would tend to lessen his period of disability under S.C.Code of 1962 § 72–305 by removing obstacles which interfered with claimant's course of training toward economic self-sufficiency); *O'Banner*, 319 S.C. at 28, 459 S.E.2d at 327 (claimant's receipt of prescriptive medicines after he had reached maximum medical improvement constituted substantial evidence from which the commissioner could conclude the medication helped to temporarily alleviate the claimant's remaining symptoms, but his medical condition would not further improve); *see also Swinton v. South Carolina Dep't of Mental Health*, 314 S.C. 202, 442 S.E.2d 215 (Ct.App.1994) (The conclusion that a claimant has reached maximum medical improvement does not necessarily amount to a conclusion that the claimant's disability has ended.).

In view of the distinction between "disability" and "maximum medical improvement," the circuit court correctly held the commission erred as a matter of law in concluding Bruccoli was no longer required to pay Dodge's medical benefits because he reached maximum medical improvement on September 8, 1992. A finding that Dodge had reached maximum medical improvement did not subsume the period of disability within the context of section 42–15–60.

■ The question then becomes whether Dodge's additional medical treatment would "tend to lessen the period of disability." The Supreme Court's interpretation of this phrase in *Dykes v. Daniel Constr. Co.*, 262 S.C. 98, 202 S.E.2d 646 (1974), provides guidance for our decision. In *Dykes*, the claimant sustained a compensable injury to his left eye. The employer accepted liability for the claimant's medical care and treatment until there could be a hearing to determine the nature and extent of the claimant's disability, whether an award should be made for disfigurement, and whether the claimant was entitled to further medical benefits. The commissioner held the injury to claimant's left eye resulted in: 1) serious head and facial disfigurement; 2) permanent disability of 100 percent loss of vision in the left eye; and 3) the need for further medical care. The commissioner's decision was affirmed by the full commission and the circuit court.

On appeal, the employer challenged each of these findings. The Supreme Court found the evidence in the record sustained the finding of disfigurement and the claimant suffered a total loss of vision to his left eye. In terms of the claimant's need for additional medical treatment, the Court applied S.C.Code of 1962 § 72–305, the precursor to section 42–15–60.[1]

---

1. S.C.Code of 1962 § 72–305 was amended in 1972 to require employers to furnish "reasonable and necessary" medical care and treatment, without regard to any compensation limitation, during the life of an employee whose injury results in total and permanent disability. Act No. 1167, 1972 S.C. Acts 2344. Subsequently, section 72–305 was recodified as section 42–15–60. S.C.Code Ann. § 42–15–60 (1976). This recodification did not, however, alter the original statutory language. In 1980, section 42–15–60 was again amended to require employers to furnish prosthetic devices as long as they are necessary during the life of an employee whose injury results in partial permanent disability. Act No. 445, 1980 S.C. Acts 1349. Although these amendments were not considered at the time of the *Dykes* decision, we do not

The Court found the record supported the finding that further medical treatment was necessary for the claimant. In reaching this conclusion, the Court reasoned that without medical treatment and medication, the pain in the claimant's eye would become incapacitating. It stated:

> We agree with the conclusion of the lower court that "although claimant has sustained a 100% loss of vision in his left eye and is presently employed, without the continuing treatment and medication, he would no doubt sustain a loss of wages through inability to function properly." This testimony sustains the conclusion that further medical treatment "will tend to lessen the period of disability" of respondent, within the meaning of the quoted provisions of Code Section 72–305.

*Dykes*, 262 S.C. at 110, 202 S.E.2d at 652.

■ Applying the Supreme Court's interpretation of section 72–305, we find an employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability despite the fact the claimant has returned to work and has reached maximum medical improvement. The *Dykes* court clearly recognized that even if a claimant's physical impairment rating does not change, his or her earning capacity may be reduced without the benefit of further medical care and treatment.

The instant case is factually similar to *Dykes*. Like the claimant in *Dykes*, Dodge has reached maximum medical improvement and has returned to work. Moreover, Dodge testified he would not be able to work without the aid of Tylenol # 3 and Dr. Borucki's medical treatment. Even though Dr. Redmond testified the medication would not reduce Dodge's impairment rating, he believed the pain medication made the difference between Dodge being able to work and not being able to work. He did not think Dodge would be working were it not for the pain medication. In fact, he stated Dodge "would be more disabled if he were not able to receive the medication." Dr. Borucki agreed with Dr. Redmond's assessment that Dodge would require treatment permanently in order to function at home and in his employment.

---

believe these additional provisions affected the decision nor does Bruccoli contend on appeal that they did.

Despite the factual similarity to *Dykes*, we find the circuit court erred in concluding, as a matter of law, that additional payments after September 8, 1992, tended to lessen Dodge's period of disability. The commission never reached this issue in its original order.[2] Section 42–15–60 specifically vests the authority to award additional benefits in the "judgment of the Commission." *See Sanders v. Litchfield Country Club,* 297 S.C. 339, 377 S.E.2d 111 (Ct.App.1989) (where the commission made no finding that continued medical treatment would tend to lessen the claimant's period of disability as provided by section 42–15–60, circuit court erred in failing to remand case to the commission for this determination). Therefore, whether Dodge's receipt of medication after September 8, 1992, "tend[ed] to lessen [his] period of disability" was a question of fact to be decided by the commission.

In this case, the circuit court substituted its judgment for that of the commission. Moreover, it precluded the commission from reaching its own finding by specifically directing the commission to award further medical treatment and medication. We reverse and remand this portion of the circuit court's order for the commission to address this factual issue.

## CONCLUSION

Accordingly, we affirm in part, reverse in part, and remand for the commission to determine whether continued pain medication and treatment after September 8, 1992, tended to lessen Dodge's period of disability.[3]

---

**2.** The commission did not decide this question because its inquiry was cut short by the mistaken belief that Dodge, as a matter of law, was not entitled to additional benefits. The circuit court states the commission's findings that medical treatment provided prior to September 8, 1992, lessened Dodge's period of disability and the commission's alleged factual finding that the treatment did not change after September 8th amounted to a finding that later treatment lessened the period of disability. We find no reference whatsoever to treatment after September 8, 1992, in the original order.

**3.** We need not address Bruccoli's argument the circuit court erroneously applied the substantial evidence standard because we find the commission did not make a factual finding.

 

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

CURETON and STILWELL, JJ., concur.