564 S.E.2d 354

Mark LEE, Employee/Claimant, Appellant,

v.

HARBORSIDE CAFÉ and The Hartford Company,
Employer/Carrier, Respondents.

No. 3494.

Court of Appeals of South Carolina.

Submitted April 8, 2002.
Decided May 13, 2002.
Rehearing Denied June 19, 2002.

Samuel S. Svalina and Jennifer I. Campbell, both of Svalina Law Firm, of Beaufort, for appellant.

Stephen L. Brown, F. Drake Rogers and Stephen P. Groves, all of Young, Clement, Rivers & Tisdale, of Charleston, for respondents.

HOWARD, J.

In this workers' compensation action, Mark Lee alleges he sustained a psychological impairment in addition to a physical injury while working as a cook for the Harborside Café ("Employer"),[1] in Hilton Head, South Carolina, during the summer of 1992. The single commissioner found Lee was entitled to an award for partial loss to his psychological system and continued treatment for irritable bowel syndrome. The full commission reversed, and the circuit court affirmed the full commission's decision. Lee appeals. We affirm.

## FACTS

Lee was injured on July 20, 1992, when a golf cart he was on went over a seawall at Harbour Town in Hilton Head Island. Lee did not know how to swim and was afraid he would drown. While clinging to a rope to prevent himself from falling in the water, Lee was struck by the golf cart and received several minor physical injuries.

Lee was treated for his minor injuries and released with no findings of permanent impairment. He was paid fourteen weeks of temporary total benefits for the time during which he was unable to work. After a hearing in October 1996, the single commissioner determined Lee had reached maximum medical improvement ("MMI") for his physical injuries by November 17, 1992. However, the commissioner concluded Lee was entitled to further treatment and evaluation for post-traumatic stress disorder and irritable bowel syndrome. Employer was ordered to provide this treatment.

---

1. The Employer and its insurance carrier, The Hartford Company, are joined as respondents to this appeal. For clarity, these parties shall both be referred to as the "Employer."

When Lee's treating physicians again placed him at MMI, Employer requested a hearing. On December 3, 1998, the single commissioner conducted a hearing to determine whether Lee had any permanent partial disability. In her subsequent order, the single commissioner awarded Lee twenty-five weeks of permanent partial disability for a partial loss of his "psychological system," treating it as a scheduled member of the body, as well as ten weeks for partial loss of use of his rectum due to the irritable bowel syndrome. The single commissioner found that Lee had reached MMI with respect to both his post-traumatic stress disorder and his irritable bowel syndrome on May 25, 1998 and that Employer was not responsible for any medical treatment after that date. However, with regard to the irritable bowel syndrome, Employer was ordered to provide medication necessary to maintain Lee at his current plateau.

Employer timely appealed this order to the full commission. The full commission reversed the decision of the single commissioner.[2] Lee appealed the full commission's order to the circuit court. The circuit court affirmed the decision of the full commission. Lee's subsequent motion for reconsideration was denied. Lee appeals.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Any review of the full commission's factual findings is governed by the substantial

---

2. The full commission's order is not included in the record on appeal. Nonetheless, in Lee's subsequent "Appeal from Workers Compensation Commission Panel Review" filed December 2, 1999, he states that the full commission made three findings:

1. That the Single Commissioner's finding that the Carrier shall pay to [Lee] 25 weeks of permanent partial disability for a partial loss of his "psychological system" is an error at law and simply not supported by the evidence in the record;

2. That the Employer/Carrier shall not be responsible for any prescriptions and/or medical treatment after the date of [MMI], which is May 25, 1998; and

3. That the Hearing Commissioner's finding that [Lee] is due 10 weeks for partial loss of use of his rectum is hereby affirmed.

evidence standard. *Smith v. Squires Timber Co.*, 311 S.C. 321, 325, 428 S.E.2d 878, 880 (1993). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached. *Miller v. State Roofing Co.*, 312 S.C. 452, 454, 441 S.E.2d 323, 324–25 (1994).

## DISCUSSION

■ The full commission reversed the single commissioner's award of damages for injuries to his psychological system, and the circuit court affirmed this decision. Lee asserts this was error. We disagree.

■ Generally, an injured employee may proceed under either the general disability sections 42–9–10 and 42–9–20 or under the scheduled member section 42–9–30 in order to maximize recovery under the South Carolina Workers' Compensation Act. *See Brown v. Owen Steel Co.*, 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct.App.1994) (proceeding under the general disability sections for an injury to a scheduled member gives the claimant "the opportunity to establish a disability greater than the presumptive disability provided for under the scheduled member section."). Only where a scheduled loss is not accompanied by additional complications affecting another part of the body is the scheduled recovery exclusive. *Id.* (citing *Singleton v. Young Lumber Co.*, 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960)).

In the current case, Lee does not assert his injury is compensable under sections 42–9–10 or 42–9–20 [3]. Instead, he asserts that the injury to his psychological system is compensable as an injury to a scheduled member. *See* S.C.Code Ann. § 42–9–30 (1985 & Supp.2001); 25A S.C.Code Ann. Regs. 67–1101 (1990 & Supp 2001).

---

**3.** Sections 42–9–10 and 42–9–20 govern the award of compensation for total and partial disability, respectively. *See* S.C.Code Ann. § 42–9–10 (Supp.2001); S.C.Code Ann. § 42–9–20 (1985).

Section 42–9–30 provides specific recoveries for total or partial physical losses and impairments suffered by an employee to certain scheduled members including: thumbs, fingers, toes, hands, arms, feet, legs, eyes, and ears. S.C.Code Ann. § 42–9–30 (1985 & Supp.2001). This section further provides:

For the total or partial loss of, or loss of use of, a member, organ or part of the body *not covered herein* ... [t]he Commission shall by regulations prescribe the ratio which the partial loss or loss or partial loss of use of a particular member, organ or body part bears to the whole man, basing such ratios on accepted medical standards and such ratios shall determine the benefits payable under this subsection.

*Id.* (emphasis added).

Regulation 67–1101 provides additional examples of compensable scheduled members. It states that

[t]his schedule of organs, members, and bodily parts lists prominent parts of the anatomy subject to occupational injury *and is not complete.* The value of an organ, member, or bodily part not included *may be determined in accordance with the American Medical Association's "Guide to the Evaluation of Permanent Impairment",* or any other accepted medical treatise or authority. Compensation shall be payable for a total loss, permanent partial loss, or loss of use of a member, organ, or part of the body when compensation is not otherwise payable.

25A S.C.Code Ann. Regs. 67–1101 (1990 & Supp 2001) (emphasis added). The regulation further states it "does not include injury to the many bodily systems, organs, members, and anatomical parts" which may be independently recoverable under sections 42–9–10 and 42–9–20. *Id.* Nowhere is the psychological system listed as a scheduled member.

Lee asserts that the psychological system is a scheduled member by reference to the American Medical Association's "Guide to the Evaluation of Permanent Impairment," the medical treatise identified in regulation 67–1101. We agree with the circuit court and full commission that Lee's psychological system is not a scheduled member.

While we do not question that the "Guide to the Evaluation of Permanent Impairment" identifies a mental injury as a legitimate medical ailment, we are unpersuaded that a purely

intangible injury such as one to the psychological system was intended by the legislature to be classified as a scheduled member compensable under section 42–9–30. The list of scheduled members in the statute and accompanying regulation include only tangible and physically identifiable organs, members, or other parts of the human body. Furthermore, our supreme court has already determined that a psychological impairment is not compensable under section 42–9–30. *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 393 S.E.2d 172 (1990). Consequently, the circuit court was correct in affirming the full commission's conclusion that Lee was not entitled to compensation for a psychological impairment under section 42–9–30. *Id.* at 556, 393 S.E.2d at 174.

Lee maintains that *Fields* is not controlling because regulation 67–1101 "now clearly states that it is *not* an exclusive and complete list of body parts, members, and organs for which impairment awards may be granted." However, the regulation concerning scheduled losses stated it was not an exclusive list at the time *Fields* was decided. *See* S.C.Code Ann. Regs. 67–35 (1989) (stating that "[t]his schedule . . . is not complete . . .; and the value of any organ, member, or bodily parts not included in this schedule will be determined in accordance with The American Medical Association's 'Guides to the Evaluation of Permanent Impairment' and any other relevant medical authority"). Lee also asserts that "recent appellate decisions demonstrate an increased recognition of psychological injuries." In support of his argument, Lee cites *Stokes v. First National Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991), *Getsinger v. Owens–Corning Fiberglas Corp.,* 335 S.C. 77, 80, 515 S.E.2d 104, 105–106 (Ct.App.1999), and *Estridge v. Joslyn Clark Controls,* 325 S.C. 532, 482 S.E.2d 577 (Ct.App. 1997). Although these cases would allow compensation for psychological or mental injury in a disability setting, none of these cases support an award of compensation for such an injury as a scheduled loss pursuant to section 42–9–30.

We conclude Lee's psychological system is not a scheduled member and substantial evidence supports the conclusions of the full commission.[4]

---

4. However, we find any reading beyond the finding that a psychological impairment is not a scheduled loss unnecessarily expands the holding in *Fields.*

■ Lee also argues he should continue to receive medications and medical treatment to maintain his plateau of recovery beyond the date of MMI on May 25, 1998. We disagree.

■ The burden is upon a claimant to prove such facts as will render his injury compensable within the provisions of the Worker's Compensation Law. *Kennedy v. Williamsburg County*, 242 S.C. 477, 480, 131 S.E.2d 512, 513 (1963). Such an award must not be based on surmise, conjecture, or speculation. *Id.*

■ Generally, even though a claimant has reached MMI, if additional medical care or treatment would "tend to lessen the period of disability," then the full commission may be warranted in requiring such treatment to at least maintain the claimant's degree of physical impairment. *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 581, 514 S.E.2d 593, 597 (Ct.App.1999). That is, MMI "is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *Id.* at 581, 514 S.E.2d at 596. Therefore, "an employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability despite the fact the claimant has returned to work and has reached [MMI]." *Id.* at 583, 514 S.E.2d at 598.

Here, it is undisputed that Lee, in fact, did return to work in the summer of 1998. On cross examination before the single commissioner, Lee admitted that he was receiving $200 per week in worker's compensation benefits from an injury sustained only months before the hearing at his other employment.

None of the letters written by Lee's doctors directly address Lee's ability to return to work or whether any future medical treatments would be necessary to forestall Lee from becoming incapacitated. In fact, the only person to directly address this issue was Dr. Lee Woodward in his Vocational Evaluation report on March 17, 1997. In that report, Dr. Woodward found "no reason for [Lee] to be unable to work" in his occupation as a cook, other than his desire not to.

Under our scope of review, the findings of the full commission will not be set aside if they are supported by substantial evidence and not controlled by legal error. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). We find substantial evidence in the record supports the full commission's order denying future medical treatments for Lee's irritable bowel syndrome. We find nothing in the record to refute the presumption that the full commission weighed all the testimony and found that Lee, at least under the Workers' Compensation Law, is not disabled.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court affirming the full commission is

**AFFIRMED.**[5]

HEARN, C.J. and GOOLSBY, J., concur.

---

**5.** We decide this case without oral argument pursuant to Rule 215, SCACR.