622 S.E.2d 577

**John BASS, Jr., Employee, Respondent,**

**v.**

**KENCO GROUP, Employer, and Zurich American Insurance Company, Carrier, Appellants.**

**No. 4046.**

Court of Appeals of South Carolina.

Heard Nov. 8, 2005.

Decided Nov. 21, 2005.

452

454

Darryl D. Smalls, of Columbia, for Appellants.

Hyman S. Rubin, Jr., of Columbia, for Respondent.

ANDERSON, J.:

In this Workers' Compensation case, Kenco appeals the circuit court's order affirming an award of benefits to John Bass.

## FACTUAL/PROCEDURAL BACKGROUND

In July of 2000, Bass began driving a truck, delivering and installing appliances for Kenco. Bass injured his left shoulder on January 24, 2001 while he and a co-worker attempted to move an 800–pound refrigerator down the ramp of a tractor-trailer. After returning to work, Bass re-injured his left shoulder on March 2, 2001 while unloading a double oven.

Dr. Fulton began treating Bass after the March 2 injury. He placed Bass on light-duty restrictions of no overhead lifting with the left arm, and no lifting of greater than ten pounds. Bass underwent a six-week pain management program. He was eventually released by Dr. Midcap to return to work on a permanent light-duty status. Bass was able to perform office work, but could no longer drive a truck. Due to the sedentary work restrictions, Bass earned only one-third to one-half the salary he made as a truck driver.

In addition to his physical indisposition, Bass experienced anxiety and depression. Dr. Drummond performed a psychological evaluation and declared Bass "dysfunctional." Dr. Drummond concluded:

the Claimant's chronic pain was interfering with his life more than normal, that he was suffering from affective distress and feeling of diminished control over his life, and ... he was evidencing lower overall general activity including social activity, activities away from home, outdoor work, household chores, and a lower repertoire of distracting responses to help him cope with the pain.

Bass was referred to a psychologist, who determined he would be unable to return to work until his symptoms subsided. Bass saw Dr. Estefano, a psychiatrist, who opined Bass

had developed severe depression and panic attacks as a consequence of his work-related injury. According to Dr. Estefano, Bass would "not be able to return to work for an indefinite amount of time due to his mental and physical condition."

Bass filed a Form 50 seeking an award for (1) permanent partial general disability as a result of injuries to his left shoulder and mental and emotional injuries; (2) past and future medical examination and treatment for psychological and psychiatric conditions induced by the accident; (3) a determination of average weekly wage and compensation rate; and (4) other appropriate benefits under the Workers' Compensation Act.

The single commissioner concluded:

Pursuant to S.C.Code Ann. § 42–9–20 John Bass, Jr. has sustained permanent partial disability which has permanently altered his earning capacity from a pre-accident average weekly wage of $1,211.52 to a current weekly expectation of $280, which results in a weekly wage loss of $931.52. Multiplying this figure by .667 equals $621.77 for an accident occurring in 2001. I conclude that the Claimant has suffered this wage loss for the maximum period of 340 weeks for permanent partial disability pursuant to S.C.Code Ann. § 42–9–20. I further find that the Claimant's partial disability began after a period of total disability and therefore pursuant to said section the amounts paid for temporary total disability shall not be deducted from the maximum of 340 weeks allowed for permanent partial disability.

Additionally, the commissioner ordered Kenco to pay for past psychiatric and psychological treatment and medications, and "any continuing causally related treatment and medications for those conditions ... which tend to lessen the Claimant's period of disability resulting from his accident-related psychiatric or psychological conditions. *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 514 S.E.2d 593 (Ct.App.1999)."

The appellate panel and the circuit court affirmed.

### STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions

of the workers' compensation commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); *Bass v. Isochem,* 365 S.C. 454, 617 S.E.2d 369 (Ct.App.2005); *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 599 S.E.2d 604 (Ct.App.2004). A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Bursey v. South Carolina Dep't of Health & Envtl. Control,* 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004); S.C.Code Ann. § 1–23–380(A)(6)(e) (2005). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the appellate panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 363 S.C. 612, 611 S.E.2d 297 (Ct.App.2005); *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 593 S.E.2d 491 (Ct.App.2004); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (2005).

▮▮▮ The substantial evidence rule of the APA governs the standard of review in a workers' compensation decision. *Frame,* 357 S.C. at 527, 593 S.E.2d at 494; *Corbin v. Kohler Co.,* 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); *see also Lockridge v. Santens of America, Inc.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001) ("Any review of the commission's factual findings is governed by the substantial evidence standard."). Pursuant to the APA, this Court's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law. *See Rodriguez v. Romero,* 363 S.C. 80, 610 S.E.2d 488 (2005); *Gibson v. Spartanburg Sch. Dist. # 3,* 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000); S.C.Code Ann. § 1–23–380(A)(6) (2005); *see also Grant v. Grant Textiles,* 361 S.C. 188, 191, 603 S.E.2d 858, 859 (Ct.App.2004) ("A reviewing court will not overturn a decision by the workers' compensation commission unless the determination is unsupported by substantial evidence or is affected by an error of law."); *Lyles v. Quantum Chem. Co. (Emery),* 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (noting that in reviewing decision of workers' compensation commission, court of appeals will not set aside

its findings unless they are not supported by substantial evidence or they are controlled by error of law). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.,* 357 S.C. 619, 594 S.E.2d 272 (2004); *Jones v. Georgia–Pacific Corp.,* 355 S.C. 413, 586 S.E.2d 111 (2003); *Etheredge v. Monsanto Co.,* 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002); *Broughton v. South of the Border,* 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999).

The appellate panel is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729; *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the appellate panel. *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000); *Parsons v. Georgetown Steel,* 318 S.C. 63, 456 S.E.2d 366 (1995); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495; *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 519 S.E.2d 102 (1999); *DuRant v. South Carolina Dep't of Health & Envtl. Control,* 361 S.C. 416, 604 S.E.2d 704 (Ct.App.2004); *Corbin,* 351 S.C. at 618, 571 S.E.2d at 95; *Muir,* 336 S.C. at 282, 519 S.E.2d at 591. Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive. *Hargrove,* 360 S.C. at 290, 599 S.E.2d at 611; *Etheredge,* 349 S.C. at 455, 562 S.E.2d at 681.

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.,* 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.,* 335 S.C. 46, 515 S.E.2d 532 (1999); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495. It is not within our province to reverse findings of the appellate panel which are supported by

substantial evidence. *Pratt*, 357 S.C. at 622, 594 S.E.2d at 274–75; *Broughton*, 336 S.C. at 496, 520 S.E.2d at 637.

## *LAW/ANALYSIS*

### I. Efficacy of Kenco's Assignments of Error

As a threshold issue, Bass argues Kenco's appeal should be dismissed because (1) its assignments of error "fail to meet the standard of specificity required for judicial review," and (2) Kenco asserts an erroneous standard of review.

The circuit court noted that Kenco's assignments of error all contend the commission's findings were " 'not supported by the greater weight of credible evidence nor ... by existing South Carolina statutory or case law.' " The assignments, according to the circuit court, "fail to meet the standard of specificity required for judicial review under the Administrative Procedures Act." Furthermore, Kenco erroneously substitutes a preponderance or greater weight of the evidence standard for the appropriate substantial evidence standard.

*Smith v. South Carolina Department of Social Services,* 284 S.C. 469, 327 S.E.2d 348 (1985), sets forth the specificity requirement for appeals under the APA:

[A] petition which will suffice legally must be one which will direct the court's attention to the abuse or abuses allegedly committed below through a distinct and specific statement of the rulings complained of. In short, the petition must include all that is necessary to enable the appellate court to decide whether the ruling complained of was erroneous.

*Id.* at 470–71, 327 S.E.2d at 349. In *Smith,* the petition for review was "broad and unspecific," and contained "no allegation which would explain why [the appellant] believe[d] the agency decision was wrong." *Id.* The *Smith* court stated, "In essence, the petition merely represents a statement by her that she is dissatisfied with the decision that she received from the agency below." *Id.*

Unlike the court in *Smith,* Kenco's assignments of error are not so opaque or laconic as to hinder our review. Moreover, Kenco's framing of the alleged errors in terms of "the greater weight of evidence" is likely an inadvertent scrivener's error.

This Court is fully cognizant of the proper standard of review to be employed in Workers' Compensation cases. South Carolina jurisprudence exuberates with precedent extant on the proper standard of review. Accordingly, we decline to dismiss this appeal based on Kenco's assignments of error.

## II. Award of Benefits

### A. The Award Under Section 42–9–20

Kenco maintains the court erred in affirming the commission's award of benefits under S.C.Code Ann. § 42–9–20 (1985) because "the facts of this case do not support a loss of earning capacity, since the claimant never was physically fit to drive a truck."

Section 42–9–20 provides:

Except as otherwise provided in § 42–9–30, when the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee during such disability a weekly compensation equal to sixty-six and two-thirds percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than the average weekly wage in this State for the preceding fiscal year. In no case shall the period covered by such compensation be greater than three hundred forty weeks from the date of injury. In case the partial disability begins after a period of total disability, the latter period shall not be deducted from a maximum period allowed in this section for partial disability.

S.C.Code Ann. § 42–9–20 (1985).

"Under our Worker's Compensation Act, a claimant may proceed under § 42–9–10 or § 42–9–20 to prove a general disability; alternatively, he or she may proceed under § 42–9–30 to prove a loss, or loss of use of, a member, organ, or part of the body for which specific awards are listed in the statute." *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990) (footnote omitted). "[A]n award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such

a showing." *Id.* (citing *Roper v. Kimbrell's of Greenville, Inc.,* 231 S.C. 453, 99 S.E.2d 52 (1957)). "A claimant may obtain partial permanent disability under S.C.Code Ann. § 42–9–20 (1976). To do so a claimant must show an injury and a loss of earning capacity." *Wigfall v. Tideland Utilities, Inc.,* 354 S.C. 100, 105 n. 3, 580 S.E.2d 100, 102 n. 3 (2003) (citing *Roper,* 231 S.C. 453, 99 S.E.2d 52).

Kenco asserts that Bass was insulin dependent while employed as a truck driver, and therefore, he was driving a truck in violation of federal law. Under its theory, if Bass could not legally drive a truck while working for Kenco, he should not be given credit for the salary he enjoyed while doing so.

There is no evidence in the record suggesting Bass drove a truck while insulin dependent. Approximately one month before starting his job with Kenco, a doctor gave Bass insulin shots. Bass testified "the blood sugars kept dropping with the insulin, so I discontinued the insulin and went back to diet and exercise." On a Kenco medical history questionnaire filled out prior to being hired, Bass indicated that he did not have diabetes. At the hearing, Bass explained he checked "No" "[b]ecause it wasn't a major problem, it wasn't a problem at that time." Further, Bass discussed his diabetic incident with Kenco manager Steve McIntire and with the Kenco doctor who performed a physical on him:

> I told [McIntire] that I had problems with sugar diabetes before. That recently I had had it back in June, a flare up, my wife got sick. When I took the physical I spoke with that doctor and told them the same thing.
>
> . . . .
>
> Q: So what did Mr. McIntire tell you about that?
> A: As long as I passed the physical he did not have a problem with that.
> Q: What was the problem that they had with diabetes in general, according to Mr. McIntire, what was the problem with them?
> A: Only if I had to go back on insulin would I not be able or be allowed to drive tractor-trailers.

**Tests conducted as a part of Bass's physical came back negative for diabetes.**

Bass averred he was not insulin dependent at any time while driving a truck for Kenco:

Q: Did you go on insulin at any time when you were driving their trucks?

A: Not when I was driving their trucks.

Q: No time?

A: No time.

Q: So at no time were you insulin dependant when you were doing the job for which you were hired?

A: That's right. . . .

The federal regulation pled by Kenco provides:

(a) A person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so. . . .

(b) A person is physically qualified to drive a commercial motor vehicle if that person—

. . . .

(3) Has no established medical history or clinical diagnosis of diabetes mellitus **currently requiring insulin for control**[.]

49 C.F.R. § 391.41 (emphasis added).

In essence, Kenco attempts to apply the phrase "able to earn" in section 42–9–20 to the average weekly wages Bass was earning prior to the injury, and then argue that he should be deemed unable to earn $1,211.52 because of the diabetes. Yet, according to Bass's uncontroverted testimony, he was **NOT** insulin dependant at any time while driving a truck for Kenco. Thus, even if Kenco's legal theory were sound, it would fail because it is unsupported by the evidence. We reject Kenco's position that the facts of this case do not support Bass's loss of earning capacity because he was not actually able to legally earn the income.

### B. Award Under 42–9–30 Not Mandated

Indubitably, the record supports an award under section 42–9–20. Consequently, we disagree with Kenco's argument on appeal that the commission should have entered an award pursuant to section 42–9–30.

In *Lee v. Harborside Cafe,* 350 S.C. 74, 564 S.E.2d 354 (Ct.App.2002), this Court explained:

Generally, an injured employee may proceed under either the general disability sections 42–9–10 and 42–9–20 or under the scheduled member section 42–9–30 in order to maximize recovery under the South Carolina Workers' Compensation Act. *See Brown v. Owen Steel Co.,* 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct.App.1994) (proceeding under the general disability sections for an injury to a scheduled member gives the claimant "the opportunity to establish a disability greater than the presumptive disability provided for under the scheduled member section."). Only where a scheduled loss is not accompanied by additional complications affecting another part of the body is the scheduled recovery exclusive. *Id.* (citing *Singleton v. Young Lumber Co.,* 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960)).

*Lee* at 78, 564 S.E.2d at 356.

In *Stokes v. First National Bank,* 298 S.C. 13, 21, 377 S.E.2d 922, 926 (Ct.App.1988), *aff'd by* 306 S.C. 46, 410 S.E.2d 248 (1991), we held that "mental injuries are compensable if, as in heart attack cases, the mental injury is induced either by physical injury as in *Kennedy* or by unusual or extraordinary conditions of employment." Here, the commission found Bass incurred a mental injury as a result of the physical injury he sustained to his shoulder. As found by the circuit court, the commission's rulings concerning Bass's psychological and psychiatric problems

are supported by the unrefuted opinions of the Employee's regular physician, his psychiatrist, his psychologist, his vocational expert, and the Palmetto Health Alliance psychologist that the Employee suffered post-traumatic syndrome disorder, that he had an adjustment disorder with depressed mood, that his pain profile classification was "Dysfunctional," and that these problems were directly induced by the injuries sustained in the accident. The Single Commissioner's order, adopted in full by the Hearing Panel, quoted liberally and convincingly from the records of those individuals and cited overwhelming support for the ultimate findings of the Commission in regard thereto. Conversely, the Defendants proffered no contradictory evidence whatsoever either by way of APA submissions, cross-questioning of

those experts, or deposition evidence. Thus, not only was there substantial evidence to support the commission's conclusions but in fact all of the evidence proffered on these points clearly and convincingly supported the Employee's contentions.

Dr. Estefano stated: "It is from this [shoulder] injury that Mr. Bass has developed severe depression and panic attack." He observed that Bass had "developed severe anxiety, severe depression, and excessive amount of pain on his shoulder due to his injury at work." Psychologist Patricia Feigley opined Bass's "emotional problems have developed as a result of being injured and unable to work at his previous level." In addition, Dr. Stuck declared: "I do sincerely believe that the anxiety and stress of his permanent disability and treatment through Workers' Comp has contributed to his emotional problems that he's now having." These uncontroverted opinions adequately support the commission's conclusion that Bass's post-traumatic syndrome disorder, panic disorder, and adjustment disorder with depressed mood were directly induced by the shoulder injury.

The record fully supports the commission's finding that Bass suffered mental problems as a result of a physical injury. Bass incurred two injuries; therefore, the award under section 42–9–20 was appropriate.

### C. Origin of Bass's Psychological and Emotional Problems

In light of the overwhelming evidence in the record, we reject Kenco's contention that the commission improperly awarded benefits to Bass for psychological and emotional problems.

"A mental-mental injury is a purely mental injury resulting from emotional stimuli." *Doe v. S.C. Dep't of Disabilities & Special Needs,* 364 S.C. 411, 418, 613 S.E.2d 785, 788 (Ct.App.2005) (citation omitted). In order to receive benefits for a mental-mental injury unaccompanied by a physical injury, a claimant must demonstrate the "stressful employment conditions causing the mental injury were extraordinary and unusual in comparison to the normal conditions of the

employment." S.C.Code Ann. § 42–1–160 (Supp.2004); *Doe* at 418, 613 S.E.2d at 788.

However, where "the mental injury is *induced* by physical injury, it is not necessary that it result from unusual or extraordinary conditions of employment." *Getsinger v. Owens–Corning Fiberglas Corp.*, 335 S.C. 77, 80, 515 S.E.2d 104, 105–06 (Ct.App.1999) (internal quotation marks omitted) (emphasis in original) (quoting *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 482 S.E.2d 577 (Ct.App.1997)). Thus, a mental injury induced by a physical injury is compensable. *Doe* at 420, 613 S.E.2d at 790; *see also Stokes v. First Nat'l Bank*, 298 S.C. 13, 377 S.E.2d 922 (Ct.App.1988). "A condition, which is induced by a physical injury, is thereby causally related to that injury." *Doe* at 420, 613 S.E.2d at 790.

Kenco asserts that Bass's emotional injuries were not a result of his shoulder injury. However, Kenco's contention is not a legal argument, but a factual one. The evidence of record overwhelmingly supports the commission's conclusion that Bass's mental problems were born out of his shoulder injury. The opinions of Dr. Stuck, Psychologist Feigley, and Dr. Estefano all unequivocally link Bass's psychological issues directly to his physical injury. The commission is the finder of fact. Substantial evidence supports the commission's finding.

### III. Credit for Temporary Benefits

The commissioner's order stated:

I conclude that the Claimant has suffered this wage loss for the maximum period of 340 weeks for permanent partial disability pursuant to S.C.Code Ann. § 42–9–20. *I further find that the Claimant's partial disability began after a period of total disability and therefore pursuant to said section the amounts paid for temporary total disability shall not be deducted from the maximum of 340 weeks allowed for permanent partial disability.*

(Emphasis added.) Kenco argues the commission should have given it credit for the temporary total benefits paid after maximum medical improvement.

The pertinent sentence in section 42–9–20 provides: "In case the partial disability begins after a period of total disabili-

ty, the latter period shall not be deducted from a maximum period allowed in this section for partial disability." S.C.Code Ann. § 42–9–20 (1985).

Dr. Midcap released Bass on June 19, 2001 with a 10% permanent impairment to the left upper extremity and placed him on permanent work restrictions. Bass's depression began as a result of and after this period of temporary total disability. The period of total disability of the shoulder is separate and distinct from the subsequent period of permanent partial general disability stemming from psychological issues. Thus, Bass was paid total temporary benefits only for the uncontested period of his physical disability. Accordingly, the commissioner correctly applied section 42–9–20 and declined to give Kenco a credit for temporary benefits paid.

### IV. Maximum Medical Improvement

The commissioner found "Claimant has a) reached maximum medical improvement as to his physical injuries; b) has not reached maximum medical improvement with respect to his psychiatric and psychological complications; and c) is in need of ongoing psychiatric and psychological treatment including prescription medications under the direction of Dr. Estefano."

Kenco argues that "[p]rior to reaching MMI, the claimant is not entitled to permanent benefits." At the hearing before the circuit judge, counsel for Kenco surmised: "You cannot have an order saying that he is partially at MMI and partially not at MMI." We disagree.

Kenco has proffered no precedent or rationale demonstrating error in the commissioner's finding that Bass had reached maximum medical improvement for his shoulder injury but not for his psychological problems. Furthermore, we disagree with Kenco's statement that Bass should not have been awarded permanent benefits if he was not at maximum medical improvement. A declaration of maximum medical improvement is irrelevant to the award of permanent partial disability in this case. " 'Maximum medical improvement' is a distinctly different concept from 'disability.' " *Dodge v. Bruccoli*, 334 S.C. 574, 581, 514 S.E.2d 593, 596 (Ct.App.1999).

"Maximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.,* 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). It is true that when a claimant receiving temporary benefits reaches maximum medical improvement and is still disabled, temporary benefits are terminated and the claimant is awarded permanent benefits. *Smith v. S.C. Dep't of Mental Health,* 335 S.C. 396, 399, 517 S.E.2d 694, 696 (1999) ("The rationale for ceasing temporary benefits upon a finding of MMI is to permit entry of a permanent award. Clearly, if an employee has reached MMI and remains disabled, then his injury is permanent. This is precisely the reason to terminate temporary benefits in favor of permanent benefits upon a finding of MMI."). It does not follow, however, that a claimant who has not reached maximum medical improvement is precluded from an award of permanent benefits.

The commissioner's order documents Dr. Estefano's prognosis that " 'as long as Mr. Bass suffers from his work-related injury, he will continue to suffer mentally, emotionally, and financially.' " There is no evidence in the record rebutting or contradicting Dr. Estefano's conclusion. Therefore, the only evidence in the record indicates Bass's condition is permanent. The award of permanent partial disability was proper. The evidence supports the finding that Bass had reached maximum medical improvement with respect to his shoulder, but not his mental injuries. Therefore, we find the circuit court properly refused to remand the case.

## CONCLUSION

The order of the circuit court is hereby

**AFFIRMED.**

GOOLSBY and SHORT, JJ., concur.